[No. 32019. Department Two. March 17, 1953.]

CAROLINA COCHRAN, *Appellant,* v. HARRISON MEMORIAL HOSPITAL *et al., Respondents.*[1]

[1]Reported in 254 P. (2d) 752.

*Frederick B. Cohen* and *John E. Bowen*, for appellant.

*Eggerman, Rosling & Williams* and *Henry E. Kastner*, for respondents Harrison Memorial Hospital *et al.*

*Skeel, McKelvy, Henke, Evenson & Uhlmann*, for respondents Kenneth P. Jackson *et al.*

DONWORTH, J.—Plaintiff brought this action to recover damages for personal injuries sustained while a patient in Harrison Memorial Hospital at Bremerton, Washington. The defendants are the corporation, which operated the hospital, Evelyn G. James, a practical nurse employed by the hospital, Dr. Kenneth P. Jackson, and his associate, Dr. George Whitacre.

The action was tried to the court sitting with a jury. At the close of plaintiff's evidence, each of the defendants challenged the sufficiency of the evidence and moved to dismiss the action with prejudice. The trial court sustained the challenges and granted the motions to dismiss. Plaintiff moved

for a new trial. The motion was denied and judgment dismissing the action was entered on October 15, 1951. From that judgment, plaintiff has appealed.

Appellant, an eighty-year-old widow, suffered a slight stroke early on the morning of April 22, 1950. When she awoke from her sleep, she was extremely dizzy but managed to rap on the wall to summon her son, Harry Freed. He called Dr. Kenneth P. Jackson to care for his mother. Dr. Jackson assigned his assistant Dr. George Whitacre to the case. When Dr. Whitacre arrived at appellant's home, he found that she had suffered a paralysis of the left side of the face which prevented her from swallowing. She had control over both her arms and legs. Because of appellant's inability to swallow or take nourishment through the mouth, Dr. Whitacre decided she should be taken to the hospital, where she could be given proper care. An ambulance was called and appellant was admitted to the Harrison Memorial Hospital about noon on that day.

Dr. Whitacre gave instructions for her care over the telephone. He ordered an injection of two grains of sodium luminal shortly after admittance, along with an intravenous injection of glucose and saline solution. He further prescribed additional doses of two grains of sodium luminal at nine o'clock p. m. and again at two o'clock the following morning. These instructions were placed on the patient's hospital chart.

At six o'clock the following morning, appellant was awakened by respondent Evelyn G. James, a practical nurse employed by the hospital, who had come on duty at eleven o'clock the previous night. The nurse placed a wash basin at the right of appellant's bed, told her to wash, and left the room. Appellant had to change her position to reach the wash basin. She sat up, swung both her legs over the side of the bed, and reached for the basin. In so doing, she slipped off the edge of the bed and fell to the floor. She then screamed for help, and four nurses answered her call and lifted her back into bed.

As a result of the fall, appellant suffered an intertrochanteric fracture of the left hip. The fracture did not heal prop-

erly after it was set the first time, and it was necessary to correct the nonunion of the fracture with a bone-grafting operation in November, 1950. At the time of the trial, she was able to walk for a few minutes with the aid of crutches but used a wheel chair principally for moving around the house.

■ In reviewing the evidence in this case, we are governed by the rule that a motion for nonsuit admits the truth of the evidence of the party against whom the challenge is made and all inferences reasonably drawn therefrom and requires that the evidence be interpreted most strongly against the challenger and in the light most favorable to the opposing party. *Derr v. Bonney,* 38 Wn. (2d) 678, 231 P. (2d) 637; *Hardung v. Green,* 40 Wn. (2d) 595, 244 P. (2d) 1163.

In assignments of error two and three, appellant claims that the trial court erred in sustaining respondent doctors' challenge to the sufficiency of the evidence and in dismissing the action as to them.

■ We have held that, before a physician or surgeon may be held liable for malpractice, he must have done something in the treatment of his patient which the recognized standard of medical practice in his community forbids in such cases, or he must have neglected to do something required by that standard. In order to sustain a judgment against a physician or surgeon, the standard of medical practice in the community must be shown, and, further, that the doctor failed to follow the methods prescribed by that standard. Negligence on the part of the physician or surgeon by reason of his departure from the recognized standard of practice must be established by medical testimony. An exception to this rule is recognized where the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. *Fritz v. Horsfall,* 24 Wn. (2d) 14, 163 P. (2d) 148, and cases cited; *Derr v. Bonney, supra.*

Appellant argues that the instant case falls within the exception to the rule, citing *Olson v. Weitz,* 37 Wn. (2d) 70, 221 P. (2d) 537, and earlier decisions of this court. We do

not think that those decisions are applicable, because there the negligence involved was so obvious as to require no expert testimony. For example, in the *Olson* case a doctor had attempted to set a fractured arm. When the cast was removed, the arm was so crooked that the patient's friends noticed it.

■ The complaint charged respondent doctors with negligence in failing to instruct the hospital's employees to install bed rails on appellant's bed while she was a patient there. No testimony was presented as to when or under what circumstances the standard of medical care in the community required the use of bed rails, except that Dr. Whitacre testified that during her hours of sleep it would be a good idea to have a bed rail up to "keep her from rolling out of bed."

Appellant was not injured while she was asleep, so even viewing this testimony in the light most favorable to her, it had no application to the facts of this case.

As to the manner in which the accident occurred, appellant on cross-examination testified:

"Q. Did you reach out to this stand with your right hand or left hand? A. (indicating right hand) Q. Your right hand. And you reached over while you were still lying down in bed? A. No, I tried to sit up and I swayed and I said, 'I don't think I can make it,' and down I went. Q. Before you did that, did you try to reach the stand—I will call it, 'the stand'? A. No. Q. You then sat up deliberately in bed? A. (Nodding head affirmatively) Q. And then did you swing your legs over and hang them over the side of the bed? A. (Nodding head affirmatively) Q. Say, 'Yes,' or 'No.' A. Well, she can see me. (Referring to reporter) Q. You swung your legs over and sat on the edge of the bed with your legs hanging over? A. Yes. Q. As I recall it, you sat there a few seconds before you slid on down? A. Not very long—I slid right off. Q. As I recall, you said, 'a few seconds.' A. Well, call it whatever you want to. Q. I don't want to argue with you. I've been checking back what you told us in the deposition. At any rate, you sat there and slid down? You didn't roll off, you slid off? You just sat there and slid down? A. Slid and landed on this side. (Pointing)"

Appellant, in connection with her claim of negligence on the part of respondent doctors, refers to the fact that she was given two grains of sodium luminal when she was admitted to the hospital at noon on Saturday and similar doses at nine p. m. and two a. m. Dr. Whitacre testified that the purpose was to cause the patient to sleep.

The only other testimony as to the effect of administering this drug was given by Dr. Diefendorf, who was the surgeon who operated on appellant's hip after her fall. He stated that normally its effect would last "from several hours to perhaps six or eight hours" and that it might make a patient a little hazy.

Not only is there no testimony that appellant was affected by this drug at the time of her accident, but her own testimony (quoted above) indicates that at that time she was alert and was fully aware of what was taking place. She testified that she did not roll out of the bed but swung her legs over the side and slid off.

We, therefore, conclude that the trial court did not err in sustaining the challenge of respondent doctors to appellant's evidence.

Next, we consider the challenge of respondent nurse and the corporation operating the hospital. For convenience, we shall refer to them as the nurse and the hospital.

The complaint alleged that respondent nurse and the hospital were guilty of several different negligent acts. The only ones appellant relied on at the trial were: (1) that the hospital negligently failed to furnish appellant with a bed equipped with bed rails; (2) that the nurse negligently failed to install bed rails; and (3) that she negligently ordered the patient to wash and left her unattended though she should have known the patient was paralyzed, helpless, and unable to comprehend or communicate with others.

The evidence produced by appellant showed that the bed in which she was placed was not equipped with bed rails at any time prior to her accident. This in itself is not proof of negligence. There must be proof that appellant was in a helpless condition which was known to the nurse and the

hospital, and that reasonable care under such circumstances required the installation of bed rails.

As was said in *Smith v. Simpson*, 221 Mo. App. 550, 288 S.W. 69:

"It is not disputed that all the authorities hold that private hospitals owe to their patients such ordinary care and attention as the mental and physical condition of such patients reasonably requires. The law demands reasonable care, such care as a reasonable man would take under the circumstances existing, but no man is required to take measures against a danger which the circumstances as known to him do not suggest as likely to happen."

There being no testimony that reasonable care on the part of the nurse or the hospital under the circumstances shown in this case required the installation of bed rails, the evidence was insufficient to warrant the submission of this issue to the jury.

▌ The third ground of negligence stated above was that the nurse did not exercise reasonable care when she placed the wash basin back of appellant's bed and instructed her to wash and then left her unattended.

Appellant seeks to hold the nurse liable for this act and also her employer, the hospital, on the *respondeat superior* theory. Appellant produced no testimony, either by expert or lay witnesses, to the effect that the standard of ordinary care and attention required of the nurse and hospital under the circumstances of this case was not met because the nurse placed a wash basin in a position which was somewhat inconvenient for the patient to reach. Nor has our attention been called to any decisions holding that such conduct supports a *prima facie* case of negligence sufficient to be submitted to a jury.

Appellant seeks to predicate negligence upon her alleged paralyzed and helpless condition and her alleged inability to communicate with others. The evidence does not support this contention. It shows that the paralysis affected only one side of her face and impaired the ability to swallow. She had normal control over her arms and legs. That she was able to communicate with others is shown by the fact that im-

mediately after her fall, as she testified, she "screamed and hollered" for help.

Appellant also assigns as error the ruling of the trial court which excluded certain testimony of her son, Harry Freed. He had previously testified that there were no bed rails on appellant's bed at any time on Saturday, which was the day before the accident. Appellant's counsel asked: "Anything done about putting bedrails on the bed after you arrived Sunday afternoon?" An objection was made on the ground that what was done after the accident had no bearing on the issue of negligence. The objection was sustained. Appellant's counsel then said he wished to negative the possible contention that the bed rails might have been placed on the bed Saturday night after the son left the hospital. He made an offer of proof in the absence of the jury. Respondent's objection was sustained, and the proposed testimony was excluded.

The general rule is that evidence of subsequent repairs is not admissible to prove prior negligence. *Hatcher v. Globe Union Mfg. Co.*, 170 Wash. 494, 16 P. (2d) 824; also, 178 Wash. 411, 35 P. (2d) 32, and cases cited. Appellant now claims that the evidence should have been admitted under one of the recognized exceptions to the general rule. Under these exceptions, evidence of subsequent repairs may be admitted for the limited purposes of showing dominion or control over the instrumentality or to show the practicality of the use of a safeguard.

It is true that Dr. Whitacre, testifying as an adverse witness, was asked if any instructions had been given about the necessity of installing bed rails. He replied: "As I recall, shortly after admission when I saw her, there was a bed rail in place at her bedside."

Appellant was not bound by this answer, even assuming that it tended to prove that there were bed rails on the bed at the time of the accident. No witness testified that any bed rails were attached to the bed *at the time of the accident*. Appellant herself later testified that they were not. Thus, the excluded evidence was not material.

 Furthermore, appellant's counsel did not inform the trial judge that the proposed testimony was being offered only to "impeach" Dr. Whitacre or to show dominion or control over the bed rails or the practicality of installing them. Appellant is bound by the ground for admissibility stated at the trial and may not assert other grounds for the first time in her brief on appeal.

*Tomlinson v. Bean*, 26 Wn. (2d) 354, 173 P. (2d) 972, is directly in point. There, this court in an unanimous *En Banc* decision stated the applicable rule regarding the making of offers of proof as follows:

"The principle upon which we decide this case is that it is the duty of a party to make clear to the trial court what it is that he offers in proof, *and the reason why he deems the offer admissible over the objections of his opponent, so that the court may make an informed ruling.* If the party fails to so aid the trial court, then the appellate court will not make assumptions in favor of the rejected offer. *State v. Williams*, 12 Wn. (2d) 16, 120 P. (2d) 502; *Booth-Kelly Lbr. Co. v. Williams*, 95 Ore. 476, 188 Pac. 213. See, also, 6 Jones, Commentaries on Evidence (2d ed.), § 2526; 26 R. C. L. 1032, Trial, § 35." (Italics ours.)

Since no valid ground for the admission of this offer of proof was submitted to the trial court, we cannot hold that its rejection was error.

Appellant assigns error to the trial court's ruling when granting the motions for a nonsuit that appellant was guilty of contributory negligence as a matter of law.

We do not deem it necessary to discuss this claimed error, because a careful reading of the trial court's oral opinion shows that it granted the motions for nonsuit because of insufficiency of appellant's evidence to carry the case to the jury. As stated above, the trial court was correct in dismissing the action as to all respondents upon that ground.

Finding no substantial merit in the other assignments of error, the judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.