[No. 35099.   Department Two.   June 23, 1960.]

PHILLIP ROTH *et al., Respondents,* v. HAVENS, INC., *et al.,*
*Appellants.*[1]

*John D. MacGillivray* and *Willard W. Jones,* for appellants.

*William C. Harrison,* for respondents.

[1]Reported in 353 P. (2d) 159.

FOSTER, J.—Appellant hospital, defendant below, appeals from a judgment upon a verdict in favor of respondents for personal injuries to respondent wife.[2]

■ Error is assigned to the trial court's denial of appellant's motion for judgment notwithstanding the verdict. On such assignment, the evidence is considered in the light most favorable to respondent, together with all favorable inferences.

On June 4, 1957, respondent wife's attending physician referred her to a psychiatrist for treatment of a nervous depression. After examination, the psychiatrist prescribed a course of electric shock treatments, and, for this purpose, respondent, then sixty-eight years of age, was admitted to appellant hospital on the morning of June 5, 1957. Shock treatments were administered on June 5th, 6th, 8th, 10th and 12th. She exhibited sufficient improvement to leave the hospital by automobile on June 9th to have dinner at her son's home.

The patient was observed by hospital staff attendants every fifteen minutes during the day and at thirty-minute intervals during the night. Her room was furnished with a standard high-low hospital bed, equipped with side rails. The medical instructions were that the side rails were to be raised after shock treatment until respondent was oriented, and at night after sedation. The only expert testimony was that keeping the side rails up at other times was not only unnecessary but harmful. It was admitted, however, that, should respondent's condition at any time indicate a necessity, the bed rails were to be raised by attendants without specific instructions from a physician.

During the day, respondent wife had the liberty of the hospital, and, on June 10, 1957, while visiting a patient in an adjoining room, respondent slipped from a chair but no injury resulted and the incident was deemed quite minor.

At 6:15 a. m., on June 13th, the nurse entered respondent's room to administer routine morning care. The nurse low-

---

[2]For convenience, we will refer solely to the respondent wife.

ered the bed rails, took respondent's temperature and pulse, and, while the bed rails were down, left the room momentarily to return the temperature tray to the chart room. Respondent was sitting quietly in bed, and the nurse, upon leaving, announced that she would "be right back and take you to the bathroom." Respondent nodded, and continued to sit quietly. During the nurse's absence, a matter of a few moments, respondent moved and in an undisclosed manner slipped or fell into a sitting position on the floor. She was immediately returned to bed and was shortly thereafter examined by her attending psychiatrist. No physical injury was immediately apparent, but later that day it was revealed that she had sustained the injuries complained of.

The evidence is that, while the nurse administered to respondent on the morning in question, she appeared normal and coherent. The record does not support respondent's argument that she theretofore, or on the morning of June 13th, was confused or incoherent. Likewise, the sole testimony is that, immediately after the fall, respondent was rational and talked understandably with the nurse and, less than an hour later, with the psychiatrist.

It is undisputed that respondent wife reacted normally to the shock treatments, that is, following each treatment she would be temporarily confused, incoherent and unsteady. It is clear, however, that bed rails were required and were raised during such periods. The accident in question occurred nearly twenty-four hours after respondent's last shock treatment, a great deal longer than her usual period of confusion and much longer than any previous period of confusion. The record is barren of testimony that respondent indicated any confusion on the morning of the accident. The only testimony was that raised bed rails were harmful when the patient was awake and in a normal state unless necessitated by some unusual circumstances.

Respondent contends that particular circumstances set an individual standard of care, and that breach of some general standard need not be shown.[3]

---

[3]Respondent relies upon a line of cases respecting a hospital's duty

This case is no different from any other negligence action in which a general, theoretical standard of care is set by the law, and the questions for determination are what the duty requires in terms of particular action or inaction in the circumstances of the individual situation, and whether there has been a breach of that duty.[4] There must be a showing of what particular conduct the circumstances require in the individual case for conformity to the general standard of care. This principle is actually implicit in respondent's contention as well.

■ Certainly a hospital is not an insurer of a patient's safety. *McDonald v. Foster Memorial Hospital*, 170 Cal. App. (2d) 85, 338 P. (2d) 607; *Gray v. Carter*, 100 Cal. App. (2d) 642, 224 P. (2d) 28; *Sylvester v. Northwestern Hospital of Minneapolis*, 236 Minn. 384, 53 N. W. (2d) 17; *Simmons v. South Shore Hospital*, 340 Ill. App. 153, 91 N. E. (2d) 135; *Maki v. Murray Hospital*, 91 Mont. 251, 7 P. (2d) 228; 41 C. J. S. 341, 349, 350, § 8.

*Cochran v. Harrison Memorial Hospital*, 42 Wn. (2d) 264, 254 P. (2d) 752, states the general standard of care as follows:

" 'It is not disputed that all the authorities hold that

to a patient who is unconscious, delirious or irrational. The only evidence in this record is that on the morning of the accident respondent was normal and rational. In that state of the record, the cited cases are unavailable for the problem now before the court. Consequently, the rule of *Cochran v. Harrison Memorial Hospital*, 42 Wn. (2d) 264, 254 P. (2d) 752, controls.

[4] In Smith, Medical Jurisprudence 243, 269, chapter 16, it is stated:

"In applying the law as to what constitutes proper skill or care, regard must be had to the fact that judicial decisions are the product each of its own particular time and require to be studied with reference to it. On the general question Broom [Legal Maxims (7th ed.), 1900, p. 282] says: 'It may be laid down, as a true proposition, that, although bare negligence unproductive of damage to another will not give a right of action, negligence causing damage will do so; negligence being defined to be "the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do"; *negligence, moreover, not being "absolute or intrinsic," but "always relative to some circumstances of time, place, or person,"* imposing a duty to take care.' " (Italics ours.)

private hospitals owe to their patients such ordinary care and attention as the mental and physical condition of such patients reasonably requires. The law demands reasonable care, such care as a reasonable man would take under the circumstances existing, but no man is required to take measures against a danger which the circumstances as known to him do not suggest as likely to happen.' "

■ Respondent contends the fact that the nurse momentarily left respondent alone on the bed with the bed rails down constituted a breach of the duty of care owed the respondent. Such itself is not proof of negligence. There must be proof that respondent was in such a condition, which was known or should have been known by the nurse, that reasonable care under the circumstances required raised bed rails.

There was no such proof. In fact, the only testimony was to the contrary. Respondent's assertions in argument are unsupported by the record. The submission to the jury of appellant's negligence was, therefore, error.

We recognize that the facts in *Cochran v. Harrison Memorial Hospital, supra,* differ somewhat. However, the present case comes squarely within the principles there laid down. In the *Cochran* case, the complaint alleged that the hospital was negligent in that it failed to install bed rails. The court sustained a challenge to the sufficiency of the evidence, stating:

"The evidence produced by appellant showed that the bed in which she was placed was not equipped with bed rails at any time prior to her accident. This in itself is not proof of negligence. There must be proof that appellant was in a helpless condition which was known to the nurse and the hospital, and that reasonable care under such circumstances required the installation of bed rails. . . .

"There being no testimony that reasonable care on the part of the nurse or the hospital under the circumstances shown in this case required the installation of bed rails, the evidence was insufficient to warrant the submission of this issue to the jury."

In the *Cochran* case, *supra,* it was also alleged that the nurse "did not exercise reasonable care when she placed

the wash basin back of appellant's bed and instructed her to wash and then left her unattended." We held:

"Appellant seeks to hold the nurse liable for this act and also her employer, the hospital, on the *respondeat superior* theory. Appellant produced no testimony, either by expert or lay witnesses, to the effect that the standard of ordinary care and attention required of the nurse and hospital under the circumstances of this case was not met because the nurse placed a wash basin in a position which was somewhat inconvenient for the patient to reach. Nor has our attention been called to any decisions holding that such conduct supports a *prima facie* case of negligence sufficient to be submitted to a jury."

Therefore, some negligent act or failure to act by the hospital or its agents must be pleaded and proved. Respondent did not establish that a standard of reasonable care required the sideboards to be raised under the existing circumstances; there could thus be no proof that the failure so to do was negligence. The *Cochran* case controls.

Other cases in accord, on facts quite similar, are: *Potter v. Dr. W. H. Groves Latter-Day Saints Hospital,* 99 Utah 71, 103 P. (2d) 280; *Simmons v. South Shore Hospital, supra; Gray v. Carter, supra; Memorial Hospital v. Doring* (Fla. App.), 106 So. (2d) 565; *Marsh v. St. Petersburg* (Fla. App.), 106 So. (2d) 567.

As a consequence, the other allegations of negligence which were submitted for the jury's determination, that is, such acts and conditions which allegedly resulted in the nurse leaving respondent momentarily with the bed rails down, must also fail.

The declaration by Lord Justice Denning in *Roe v. Minister of Health,* 2 (1954) Q. B. 66, 86, is appropriate:

" . . . we should be doing a disservice to the community at large if we were to impose liability on hospitals and doctors for everything that happens to go wrong. Doctors would be led to think more of their own safety than of the good of their patients. Initiative would be stifled and confidence shaken. A proper sense of proportion requires us to have regard to the conditions in which hospitals and doctors have to work. We must insist on due care for the patient

at every point, but we must not condemn as negligence that which is only a misadventure. . . ."

Reversed and the action dismissed.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.

November 9, 1960. Petition for rehearing denied.