BOEING AIRPLANE COMPANY, a Delaware Corporation, Appellant,

v.

Virginia BROWN and Albert K. Brown, Jr., by his General Guardian, Virginia Brown, Appellees.

No. 16854.

United States Court of Appeals
Ninth Circuit.

May 22, 1961.

Holman, Mickelwait, Marion, Black &
Perkins, J. Paul Coie, and H. Weston
Foss, Seattle, Wash., for appellant.

Miracle, Treadwell & Pruzan, Hugh
Miracle and Howard P. Pruzan, Seattle,
Wash., for appellee.

Before CHAMBERS, HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

This wrongful death action is an outgrowth of the explosion and crash of a military airplane over Tracy, California, on February 16, 1956. The plane was a B–52 jet bomber manufactured by Boeing Airplane Company and delivered to the United States Air Force on December 19, 1955. Major Albert K. Brown, Sr., a member of the crew, lost his life in the accident. He left a minor son in whose behalf this action was brought against Boeing. The United States District Court, Western District of Washington, Northern Division, had diversity jurisdiction. 28 U.S.C.A. § 1332.

After a nonjury trial judgment was entered for plaintiff in the sum of $26,-000. Boeing appeals, contending that the findings of fact do not support the conclusion of law that Boeing is liable, the findings of fact as to negligence and causation are clearly erroneous, inadmissible evidence was received, and there was supervening independent negligence by the United States Air Force which relieved Boeing from liability.

The explosion which resulted in the loss of the bomber was caused by a malfunction of the right front alternator drive with which the airplane was equipped. An alternator is a device for the generating of alternating electric current. The operating requirements of the B–52 bomber necessitate the use of four alternators on each plane. The energy needed to run each alternator is supplied by a turbine type drive, powered by air admitted through a duct by the forward motion of the airplane.

In connection with the development and manufacture of the B–52 bomber for the Air Force, Boeing solicited reputable manufacturers to submit proposals for the design and manufacture of an alternator drive. The drive to be designed and manufactured was required to meet detailed performance specifications prepared by Boeing and approved by the Air Force. The proposal submitted by Thompson Products, Inc., of Cleveland, Ohio, was found the most acceptable. In 1951 that company was awarded a contract to build and test three test alternators according to the specifications referred to above.

Further design work and preliminary testing carried on by Thompson under this contract continued until October 1953. That company then undertook extensive "qualification" testing of the alternator drive, in accordance with the provisions of its contract with Boeing. The latter company and the Air Force maintained constant observation during these testing programs. While the qualification testing was not completed until the fall of 1955, it was far enough along so that Thompson was awarded a production contract in 1954. Each individual alternator drive manufactured under the production contract was extensively tested by Thompson under the observation of Air Force personnel. As each such unit was delivered to Boeing it underwent additional testing and inspection by Boeing under Air Force monitoring.

Among the alternator drives so manufactured and tested by Thompson was serial No. 81. This drive was installed in bomber No. 384, which was delivered to the Air Force on December 19, 1955. It was the malfunctioning of this particular drive which was found to have caused the airplane crash here in question. During the fatal flight of bomber No. 384 the drive's turbine wheel went into excessive overspeed and disintegrated. Portions of the turbine wheel penetrated a forward body tank causing fuel to leak and ignite. The bomber thereupon exploded and crashed.

Appellant contends that the findings of fact do not deal with the duty of care of a manufacturer which has incorporated in the article which it sells a component part designed and manufactured by another. That duty, appellant argues, is to exercise reasonable care in ascertaining whether there is a defect inherent in the design and manufacture of the component. The trial court, as appellant points out, made no express finding that.

Boeing either knew or by the exercise of reasonable care should have known of a defect inherent in the design and manufacture of the alternator drive by Thompson.

■ In determining the applicable law with respect to the duty of care under the indicated circumstances, it must be borne in mind that this suit was brought in the state of Washington with reference to an accident which occurred in the state of California. Whether the Washington or California law governs with regard to the duty of care therefore depends on the conflict of laws rule the courts of Washington would apply.[1]

■ The applicable conflicts rule on this point as enunciated by the Washington Supreme Court accords with the general rule, under which the law of the jurisdiction where the accident occurred is controlling on the substantive question of liability for negligence.[2]

■ The rule in California, where this airplane crash occurred, is that a manufacturer which buys and installs in its product components fabricated by another is subject to the same liability as though it were the manufacturer of the component. Dow v. Holly Mfg. Co., 49 Cal.2d 720, 725–728, 321 P.2d 736, 739–741. It is thus chargeable with the duty to exercise reasonable care in the design and construction of the component as well as in the testing and inspecting of the particular component which is installed in its manufactured product.

It follows from what is said above that it is immaterial, in so far as Boeing's liability is concerned, that the component which failed and caused the crash was designed and manufactured by Thompson. If Thompson failed to exercise reasonable care in the design and manufacture of that component, or if Thompson or Boeing or both failed to exercise reasonable care in inspecting or testing the component, or if Boeing failed to exercise reasonable care in installing the component in the B–52 bomber or in warning the Air Force of any known defect therein, Boeing is liable for damage proximately caused thereby.

On the question of negligence, the ultimate finding made by the trial court was that Boeing was negligent in designing, manufacturing and assembling the airplane with a defective and inadequate alternator drive and in supplying and delivering the airplane for use as it was then constructed, knowing it would be flown in such condition.

■ Having in view the applicable rule with regard to the liability of manufacturers, as discussed above, we believe this finding adequately supports the trial court's conclusion that Boeing is liable on the theory of negligence.

The next question presented is whether the findings of fact charging Boeing with that negligence which was a proximate cause of the crash are clearly erroneous.

No evidence was introduced tending to show that the Boeing or Thompson employees engaged in the designing, manufacture, testing, inspection or installation of alternator drive No. 81 were incompetent, or that insufficient time or inadequate facilities were devoted to this work. Appellee undertook to prove instead that the explosion was caused by defects in the alternator drive, which defects were inherent in the design of the drive. Had reasonable care been exercised, appellee contends, these defects would not have inhered in the design, and in any event their presence should have been detected by the exercise of reasonable methods of inspection.

The alleged defects most strongly relied upon as evidencing appellant's failure to exercise reasonable care had to do with the speed controls of the alternator drive and the manner in which the tur-

1. 28 U.S.C.A. § 1652; Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Hall v. Copco Pacific, Ltd., 9 Cir., 224 F.2d 884, 885.

2. Bogitch v. Potlatch Lumber Co., 93 Wash. 585, 587, 161 P. 487; Restatement (Second), Conflict of Laws secs. 377–83 (1958).

bine wheel was guarded. The trial court found appellant negligent in regard to both. It was found in effect that the turbine wheel of the Thompson drive went into excessive overspeed and disintegrated because the Thompson drive "did not have structural controls of the amount of power intake sufficient to control the speed of the wheel" or adequate to avoid overspeeding and bursting of the wheel. The court also found that the disintegrating wheel would not have pierced the fuel tank and caused an explosion were it not for the "thin and inadequate aluminum shroud" covering the turbine wheel. It was further found that these defects were inherent in the design and were not caused by improper maintenance or by improper personal acts or omissions by those flying the plane.

Appellee produced two expert witnesses, each of whom testified that the devices designed to regulate the admission of air to the turbine wheel and so control the speed of the wheel were structurally inadequate. The inadequacy, they testified, arose primarily from the fact that neither the normal nor the overspeed control system was located on the turbine wheel or the high speed shaft to which it was joined. Both controls were attached instead to a relatively slow speed shaft in the gear train which led from the turbine wheel to the alternator. These witnesses expressed the opinion that because of the remoteness of the speed controls from the turbine wheel, any accidental disconnection between the wheel and its high speed shaft from the rest of the gear train would permit the wheel to accelerate without control.

Appellee's expert witnesses also expressed the view that the danger they foresaw from this remote location of the controls could have been minimized by strengthening the gear train to prevent possible failure in that area. In addition they discussed the difficulties experienced with bearing failures. According to them, such failures increase vibration and produce internal stresses which may destroy the turbine wheel. They testified that it would have been feasible to add some system for detecting bearing failure.

With regard to the turbine wheel guard, appellee's experts testified that it would have been practicable to guard the wheel with one tenth of an inch of armor plate instead of the "fragile" aluminum shroud which was used. One of these witnesses testified that while it would have required one-quarter-inch armor plate to contain a disintegrating wheel, such a plate one tenth of an inch thick would stop a piece of the wheel the size of a bullet.

Appellant vigorously attacks all of this testimony, arguing that appellee's witnesses were not qualified to express opinions as to such matters; that they did not understand the operation of the speed controls on the Thompson drive; that the controls were such that any break in the gear train would have activated the controls so that "remoteness" from the turbine wheel was immaterial; that a great number of man-hours had been devoted to the design, testing and inspection of this drive; and that the experience with this drive prior to the accident provided no warning or notice that there was any defect in the speed controls which could cause the turbine wheel to disintegrate. With regard to the adequacy of the turbine wheel shroud, appellant produced testimony tending to show that the weight involved in providing armor-plate protection was prohibitive.

All of these contentions were before the trial court for evaluation. That court nevertheless placed credence in the testimony of appellee's witnesses. We need not decide whether we would have reached a like conclusion had this court been the fact-finder. An examination of the complete record convinces us that there was enough evidence in support of the findings entered that it cannot be said that such findings were clearly erroneous.

Appellant strenuously argues that even if the evidence was sufficient to support a finding that there were design defects of the kind indicated, the evidence does not support a finding that negligence was

involved or that either of such defects was a proximate cause of the accident.

If the trial court was entitled to credit the testimony of appellee's witnesses, given on the basis of a necessarily limited study, that defects inhered in the design, it was entitled to infer therefrom that such defects would have been avoided, or at least discovered, had reasonable care been exercised.

Concerning causation, the fact is undisputed that the explosion was caused by the disintegration of the turbine wheel due to excessive overspeed. The wheel could not have gone into excessive overspeed if the speed controls had functioned. Appellant produced evidence tending to show that the malfunction of the speed controls was not due to a defect but to forces external to the alternator drive. However convincing this evidence may have been, the trial court was not required to accept it. The inference actually drawn, that defects inherent in the design caused the malfunction, was permissible.

We conclude that the findings of fact as to negligence and causation are not clearly erroneous.

 Appellant next argues that evidence pertaining to changes made in the Thompson drive after the crash was inadmissible and its reception constituted prejudicial error. The rule of evidence thus invoked is that evidence of a subsequent change in or to a machine is inadmissible, being irrelevant, immaterial and incompetent with regard to the issue of prior negligence. Columbia & Puget Sound R. R. Co. v. Hawthorne, 144 U.S. 202, 12 S.Ct. 591, 36 L.Ed. 405. Appellant acknowledges that there are recognized exceptions to this rule, one being that evidence of subsequent changes may be admitted for the limited pur-

pose of showing the practicability of the use of a safeguard.[3]

 The limited purpose of appellee in offering the evidence as to changes made in the Thompson drive after the accident was to show that it would have been feasible and practicable to incorporate those features in the design at the time the alternator drive here in question was built. As so limited, the offer came within the above-noted exception to the exclusionary rule. But counsel for appellant sought to render the exception inapplicable by admitting in open court that changes would have been feasible before the accident and were in fact made afterwards.

 Counsel for appellee was not satisfied with this admission, but indicated that the evidence as to subsequent changes would be withdrawn if counsel for appellant would admit just what changes were made after the accident. The trial court accepted this proposal as appropriate and inquired if counsel for appellant would enlarge his admission to specify the changes which were made. Counsel refused to do so, taking the position that his admission as to the feasibility and the subsequent making of unspecified changes was sufficient to eliminate the issue of feasibility and render the proffered evidence irrelevant. The evidence was therefore declared admissible and was received.

In our opinion an admission that unspecified "changes" would have been feasible and were actually made does not render irrelevant evidence as to specific changes subsequent to the accident when offered for the limited purpose of proving the feasibility of such changes to correct the specific defects in issue.

Appellant further contends, however, that the evidence received over this ob-

---

3. Johnson v. United States, 9 Cir., 270 F. 2d 488, 491–492; Cochran v. Harrison Memorial Hospital, 42 Wash.2d 264, 271, 254 P.2d 752, 757. Where the case is being tried to a jury the trial court is entitled to weigh the need for such evidence against the risk that the jury may improperly infer negligence therefrom.

Hence where the trial court excludes evidence of subsequent changes in a jury trial, its ruling will be upheld except upon a showing of abuse of discretion. See Northwest Airlines, Inc. v. Glenn L. Martin Co., 6 Cir., 224 F.2d 120, 130, 50 A.L.R.2d 882.

jection related to subsequent changes which were not shown to have had any connection with the cause of the accident and were unrelated to the alleged defects in design.

█ In our view the evidence in question was directly related to the alleged defects in design. Appellees' experts had testified among other things that the speed control system was defective, there were defects in the bearings, and the pinions needed strengthening. The feasibility of designing a drive which would overcome these asserted defects was therefore drawn into issue. Relevant to this issue was the evidence to which appellants objected, that changes in the secondary or auxiliary overspeed system were made after the accident, that a mechanism was added for the purpose of detecting bearing failures, that the gear train was strengthened to prevent possible failure, and that grease seals and specifications were improved.

Not all of these changes were found to have had a causal connection with the accident. But the fact that the trial court ultimately placed primary blame on defects in the design of the speed controls and the protective shroud would not make irrelevant prior inquiries into other alleged defects in the Thompson drive.

We conclude that the trial court did not err in receiving the evidence in question.

Appellant contends that it was error for the trial court to receive in evidence, over objection, appellee's exhibit No. 18. This exhibit is a two-page document, a purported revision of a notice of "contract specification deficiency" such as was attached to the instrument (exhibit No. 17) executed by the Air Force in accepting bomber No. 384.

The original notice of contract specification deficiency is dated October 13, 1955, approximately two months before bomber No. 384 was delivered to the Air Force. This original notice makes no reference to any deficiency with respect to overspeed protection on the alternator

drives. The revision of this notice form, received as exhibit No. 18, is dated April 27, 1956, and contains this reference to overspeed protection:

"Alternator drives installed in airplanes AF53–366 (21st) and on (ECP 78), have also been subject to failure due to insufficient overspeed protection."

Appellee offered exhibit No. 18 as an admission against interest. Appellant argues that the document is not admissible for that purpose because it was not established that the language of the notice had application to bomber No. 384. Exhibit No. 18 does not expressly refer to that bomber but to "airplanes AF53–366(21st) and * * * (ECP 78)" and "AF53–366 (21st) & thru undetermined." Counsel for appellant construed those words to mean that there had been no determination regarding airplane No. 384.

█ It was conceded during argument that airplanes AF53–366 and those subsequently manufactured had the same type of alternator drive as was installed in No. 384. In view of this concession and in the light of all the other evidence, the trial court concluded that the language as quoted was intended to include the alternator drive of No. 384. We agree.

█ On this appeal appellant introduces additional reasons why exhibit No. 18 should not have been received. We regard these additional grounds as without merit, but in any event we would not reverse a ruling on the admissibility of evidence on a ground not urged in the trial court. See Mutual Benefit Health & Accident Ass'n v. Francis, 8 Cir., 148 F.2d 590, 598.

Appellant's final contention is that the intervening negligence of the Air Force relieved Boeing of liability. Appellant argues that the Air Force was negligent in three respects, each of which constituted a superseding cause of the accident.

Appellant first contends that the Air Force was negligent in its entire course of conduct in approving and accepting

the design for the alternator drive prior to manufacture, supervising its manufacture, monitoring the qualification and production testing, and accepting the completed aircraft. Appellant predicates this view upon the assumption, for the purpose of argument, that the design of the alternator drive was defective. If the design was defective, it is contended, the Air Force, in view of its continual contact with the project, was negligent in its failure to discover the defect and require its correction.

■ There was no evidence that Boeing in the manufacturing process relied in any way on inspections by Air Force inspectors. Hence there was no causal connection to be found between any interim inspections by the Air Force and the damage which subsequently occurred.

■ Up to the time of Air Force acceptance of bomber No. 384, any negligence on the part of the Air Force was not intervening negligence. It was not intermediate in point of time between the negligent acts of Boeing and the crash of the airplane, but was concurrent with and of the same kind as Boeing's acts of negligence. Concurrent negligent as distinguished from intervening negligence cannot under California law be such a superseding cause as to cut off liability. See Werkman v. Howard Zink Corp., 97 Cal.App.2d 418, 424–427, 218 P.2d 43, 47–49.

The second assertion of Air Force negligence concerns the continued use of bomber No. 384 by the Air Force after accepting delivery on December 19, 1955, up to February 16, 1956, the date of the crash.

It will be assumed for present purposes that the Air Force was negligent in failing to discover the defect in the design of the alternator drive up to the time the plane was accepted. In that event the Air Force, chargeable with knowledge of the defect, was also negligent in permitting the plane to be operated on the day of the crash. The latter negligence would be intervening since it occurred after Boeing had released the plane to the Air Force.

■ But this intervening negligence, if any, would not be a superseding cause operating to relieve Boeing of liability. Obviously the defective condition of the plane could cause harm only if the plane were operated in that condition. The happening of the very event the likelihood of which made the actor's conduct negligent cannot under California law be a superseding cause relieving him from liability. Reid & Sibell, Inc. v. Gilmore & Edwards Co., 134 Cal.App.2d 60, 65, 285 P.2d 364, 368.

■ Moreover, since no events occurred between December 19, 1955, and February 16, 1956, which would put the Air Force on notice of the defect,[4] the intervening negligence of the Air Force, if any, was of the same kind as characterized its conduct up to the time of acceptance. In this event it was continuing negligence of a kind which Boeing should have foreseen. Under California law an intervening independent act of negligence interrupts the causal connection between the initial negligence and the resultant injury only if the subsequent wrongdoer's act could not have

4. Between December 19, 1955, when bomber No. 384 was delivered to the Air Force, and February 16, 1956, when it crashed, the Air Force experienced a number of failures in the Thompson drive assemblies of other B-52 bombers. These were mostly bearing failures, although in two or three instances other parts of the drive were found to be defective. There was also a bearing failure in one of the other alternator drives of bomber No. 384 on February 1, 1956. These failures were of the same kind as were experienced on a number of occasions before bomber No. 384 was delivered. Since Boeing knew of the failures which occurred prior to the delivery of bomber No. 384, but apparently did not regard them as indicating a dangerous condition, it can hardly be contended that the Air Force was negligent in making a like appraisal of similar failures which occurred after No. 384 was delivered. In any event the trial court did not find that a failure of the kind experienced during this period was the proximate cause of this accident.

been anticipated by the first actor in the exercise of due care.[5]

The third act of Air Force negligence asserted by appellant to have constituted a superseding cause of the accident was the sending of bomber No. 384 on a lengthy flight mission at a time when the alternator drives had accumulated 99 hours and 55 minutes of flight time without overhaul.

It was provided in the specifications under which Boeing procured the Thompson drives that the units would be so designed that when operating under normal conditions the useful life without maintenance would be a minimum of 500 hours. In the handbook issued with the B-52 bomber a 400-hour replacement time was specified. In the notice of specification deficiency attached to the instrument of acceptance of bomber No. 384, however, it is noted that the contractor recommended repacking the gear boxes after 100 hours.

The alternator drive in question had been operated within five minutes of this 100-hour period during ten previous Air Force missions when bomber No. 384 was sent aloft on February 16, 1956, on the lengthy eleventh mission which proved to be its last. On that occasion the bomber had been in the air 7 hours and 51 minutes when the explosion and crash occurred. By then the alternator had been operating 7 hours and 46 minutes beyond the contractor's recommended replacement time.

Had the evidence shown and the trial court found that the malfunction of the Thompson drive was due to a condition which the 100-hour replacement limitation was intended to guard against, intervening Air Force negligence constituting a superseding cause of the accident would thus have been established. There is nothing in the record to indicate that Boeing should have foreseen disregard by Air Force of Boeing's recommended replacement time.

The fact is, however, that the deficiency in connection with which the reduced replacement time was imposed had nothing to do with any defect found to have been a proximate cause of the accident. As indicated by the portion of the notice of contract specification deficiency quoted in the margin, the condition being guarded against by the time limitation was an unsatisfactory lubrication system.[6] Malfunction of this system was not found to have any connection with that of the speed control system. The accident was found to have been proximately caused by structural defects in the design of the latter system and the insufficient thickness of the protective shroud over the turbine wheel.

The circumstances described with reference to these three asserted acts of intervening negligence by the Air Force distinguish this case from those in which the purchaser continues to use a defective article after obtaining actual knowledge of the defect which ultimately causes an accident. In such cases, whether the actual knowledge is gained by the purchaser's own observation or through notice or warning given by the manufacturer, continued use amounts to intervening negligence which will be regarded as

5. Sawyer v. Southern Calif. Gas Co., 206 Cal. 366, 374–375, 274 P. 544, 547.

6. "Deficiency: Alternator drives produced by Thompson Products Company and installed in airplanes AF53–366 (21st) and on (ECP 78), have occasionally expelled grease into the turbine exhaust, causing the unit to become inoperative. Tests have indicated that the grease originally specified for gear lubrication slumps into the gear path, which causes overheating due to 'churning' of the grease. This creates gear box pressures, resulting in grease expulsion. Contractor has recommended that 400 hours replacement time specified in -6 Handbook be amended to call for repacking the gear boxes after 100 hours."

"Corrective Action: Vendor is completing laboratory tests varying the quantity and character of grease, with indications that a change in grease specifications will greatly increase service life. Laboratory results are being verified by flight tests in airplane AF52–002, and vendor is continuing back-up programs investigating additional types of grease, mechanical aids to control lubrication, and a possible change to oil lubrication."

a superseding cause relieving the manufacturer from liability to an injured third party. Stultz v. Benson Lumber Co., 6 Cal.2d 688, 59 P.2d 100.

There is nothing is this record which would support a finding that prior to February 16, 1956, the Air Force had actual knowledge of defects in the Thompson drives of a kind which were found to have proximately caused this accident.

The judgment is affirmed.