JOSÉ LUGO PÉREZ ET AL., Plaintiffs and Appellants, *v.* SANTO ASILO DE DAMAS ET AL., Defendants and Appellees.

No. 635.        Decided October 11, 1963.

*Benjamín Ortiz, Julio Suárez Garriga,* and *Leopoldo Tormes* for appellants. *Rieckehoff & Vargas, Francisco Parra Toro,* and *Waldemar del Valle* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Relying on the rule established in *Hernández* v. *The Capital,* 81 P.R.R. 998 (1960), appellants maintain that appellees are responsible for the death of a patient who fell

from her bed in appellee's hospital, Santo Asilo de Damas in Ponce. We do not agree with them in the light of the facts of the case, which are not in controversy and which we narrate below.

On September 17, 1958 Serafina Ortiz, 67 years old, entered said hospital as directed by her private physician, Dr. Luis C. Clavell, ophthalmologist, to undergo an operation for cataract which deprived her of 90 percent of the vision of her right eye and 50 percent of the vision of her left eye. In spite of the sight defect she could walk and move around without help, and until the very day of her confinement, she personally attended a business of her own in Barriada Bélgica in Ponce. Said hospital has no doctors under contract to render services to its patients on the institution's account. There was no contractual relation of any sort between Dr. Clavell and said hospital. On the other hand, the latter charges the patient to be hospitalized, upon application for admission, an amount to cover the hospitalization expenses, operation room and whatever service, as directed by his physician, must be rendered to the person to be hospitalized. In the case at bar the amount deposited by Mrs. Ortiz was $90.

On Mrs. Ortiz entering the hospital the intern, Dr. R. Martínez, submitted her to a general examination which did not show any abnormality whatsoever which would require a special treatment or care, for which reason she was considered as a general nursing care patient, and she was confined in Santa Luisa ward where six general nursing care patients were confined. Said ward was located in the ground floor of the hospital quite near San Vicente ward, both wards being attended during the night of the events by one nurse. There was a total of fourteen patients in both wards, all of them general nursing care patients. During the night there was no direct light in Santa Luisa ward, but the light of the nursing station reflected sufficient light.

By prescription of her physician, Dr. Clavell, and for the purpose of preparing her adequately for the eye operation to be performed next day, on retiring, Mrs. Ortiz was given a dose of one grain and a half of nembutal. This sedative is very frequently used in hospitals of Puerto Rico and is administered to persons who are going to undergo an operation for the purpose of soothing them and procuring their night rest. In the present case it produced the normal reaction expected, sleep.

For unknown reasons, however, during said night Mrs. Ortiz fell from her bed and suffered a blow on the skull which produced a cerebral hemorrhage, which caused her death.

Dr. Clavell testified that he did not prescribe the use of a bed railing in Mrs. Ortiz' bed because he did not consider it necessary, for she was calm; that it is a very rare exception to prescribe bed railing in cases of cataract.

Said facts are the grounds for an action of damages filed by José Lugo Pérez and José Luis Lugo Ortiz, husband and son respectively of Mrs. Ortiz, against the Asilo de Damas and the Standard Accident Insurance Company, codefendants in the case at bar.

The case having been heard on its merits in the Superior Court, it did not find the hospital liable for negligence and dismissed the complaint.

Feeling aggrieved, and in support of their contention that the decision of the trial court was improper, appellants allege that said court committed error in deciding that the negligence of the hospital in question had not been established when in fact it was proved that the patient died as a result of a fall caused by the lack of vigilance, protection and care on the part of the officials and employees of said hospital.

In *Hernández, supra*, we briefly stated the standards that regulate the hospitals' liabilities and to that effect we said:

"A public or private hospital is not an insurer of its patients against injuries inflicted by themselves or caused by other persons. The principle of liability without fault, regardless of its apparent social usefulness, is not authorized by our laws in this activity. The hospital is liable for those damages caused by acts of commission or omission performed by its employees and officers and which are comprised within the scope of their duties. The hospital owes the patient the reasonable care and attention required by the circumstances, and these are measured by standards of reasonability and prudence. The practices prevailing in the community can serve as a guide. The decisive factors in each case are the specific conditions and conduct of the patient, his capacity to care for himself, the hospital's actual information as to those conditions and that conduct and capacity and the one it should obtain if it properly uses the skill and experience of its professional employees to verify them, and the dangers afforded by the surroundings. The duty of foreseeability does not extend to all the hazards imaginable which could conceivably threaten the patient's security but to those which are likely to happen and which can be anticipated by a prudent person. Briefly, the mythical but indispensable figure of the 'reasonably prudent man' defines the rule of conduct, and the hospital will be liable if there is damage which in the particular circumstances of the case could reasonably have been foreseen and prevented.

"Under the circumstances of this case, it is necessary to explain further one of the aforestated factors. The standards of attention and care are more demanding when the patient suffers from a physical or mental abnormality which prevents him or makes it difficult for him to take care of himself. On such occasions, depending on the specific circumstances, the hospital can be required to adopt precautionary measures additional to the ordinary ones and which can even include continuous and uninterrupted vigilance of the patient. Some examples are the cases of patients with diverse manifestations of mental derangements or deficiencies, or who are delirious, epileptic, or in a state of complete or partial unconsciousness caused by the use of drugs or anesthetics, etc. Likewise, the standards of higher diligence govern the conduct of the hospital where sick children are concerned. By reason of the child's age, a higher degree of care and attention is required and it must increase if abnormal

reactions caused by the disease are added to the incapacity of age."

Appellants argue that the decision in *Hernández* is applicable because the facts of the case at bar are analogous, for, if the former dealt with a girl the latter dealt with an old lady with scarce vision; that the children as well as the old people require the same degree of protection. In *Hernández* the girl had been given luminal, and in this case the patient took nembutal, both drugs producing identical effects. In *Hernández* there was one nurse and one practical nurse in charge of both wards while in the case at bar, both wards were attended by only one nurse. In the former the wards were adjoining each other; in the latter they were separated. In *Hernández*, the bed was not as high and narrow as the bed in the case at bar, and said bed had railings which were not put in the patient's bed in the case under our consideration. This argument does not convince us as to the applicability of the ruling in *Hernández* to the case at bar.

■ In our judgment the facts in both cases are clearly and unquestionably different. *Hernández* dealt with a seriously ill three-year-old minor who was in one of two wards with a total of 23 patients attended by one nurse. In addition to said minor there were four additional patients seriously ill who needed special care, the girl as well as the other patients, which could even be continuous or uninterrupted vigilance, especially the girl who was very restless and uneasy. On the contrary in the case at bar, Mrs. Ortiz did not seem to require special care at any time. Her only possible abnormality was limited to her sight illness, although she needed no one to move around. She could only be classified as a general nursing care patient and together with thirteen additional patients of identical care she had been confined in one of two wards which were near each other

under the supervision of one nurse. In the United States as well as in Puerto Rico when there is a proportion of 24 patients to one nurse during the night it is considered adequate nurse service.

■ In the case before us neither the patient nor any member of her family or the private doctor called the attention of the nurse or any officer of appellee's hospital as to any fact or circumstance known to any of them that it would be advisable to take special precautions in the case of said patient. Under said circumstances, the weight of the authorities maintains that the hospital is not negligent if the patient falls from her bed and suffers damages. *Memorial Hospital* v. *Doring,* 106 So.2d 565 (Fla. 1958); *Cochran* v. *Harrison Memorial Hospital,* 254 P.2d 752 (Wash. 1953); *Grace* v. *Manhattan Eye, Ear & Throat Hospital,* 93 N.E.2d 926 (N.Y. 1950). *Cf. Guidetti* v. *Columbus Hospital,* 229 N.Y.S.2d 865 (1962); *Kletrovetz* v. *Grant Hospital,* 152 N.E.2d 149 (Ohio 1957).

The service of a practical nurse in *Hernández* was justified for there were 23 children in both wards, four of them seriously ill, while in the case at bar and in accordance with acknowledged and accepted hospital standards, only one nurse was necessary for the 13 adult patients confined in the two wards, for none of them was critically ill. The separation of the two wards in respondent hospital was within the minimum standards prescribed by the Federal Public Health Service. The bed from which Mrs. Ortiz fell was of the usual ordinary type.

In *Ortiz* v. *Presbyterian Hospital,* 83 P.R.R. 298 (1961), the 64-year-old patient had undergone an operation of cataract; on the fourth day after the operation about 8:30 p.m. the patient says he heard a voice who commanded him to lie down and then he got up, he saw two beds and he lay down, and on turning over he fell out the bedroom window into the hospital's interior yard. We held that the hospital

was liable in *Ortiz* because the record showed that the patient "was mentally confused or mixed up and that he was suffering from errors of perception attributable to the fact that he had recently undergone an operation, was practically blind in the other eye and was almost deaf. Although his condition did not require constant attention, he had to be aided in order to eat, lie down and get up, and to attend to his physiological needs" and the hospital was aware of all this situation for the nurses which attended defendant so stated in their daily record. It is obvious from the summary of the facts of the case before us, that Mrs. Ortiz' condition was completely different, for she had not been operated on, she could attend to herself, and neither the hospital nor any of its officials and employees had any knowledge of any situation whatsoever which would require giving special attention to said patient; on the contrary, Mrs. Ortiz had been confined as a general nursing care patient and was being attended by her private physician who never gave orders requiring any attention other than that general attention given to general nursing care patients, which was given to Mrs. Ortiz up to the time of her fall.

In view of the foregoing, we must not apply to this case the ruling in *Hernández* nor in *Ortiz*. We must rather rely on the decisions in *Ramos Orengo* v. *Government of the Capital*, 88 P.R.R. 306 (1963). *Cf. Castro* v. *Municipality of Guánica*, 87 P.R.R. 690 (1963); *Pérez* v. *Municipality of Mayagüez*, 87 P.R.R. 589 (1963); *Sáez* v. *Municipality*, 84 P.R.R. 515 (1962).

The judgment will be affirmed.