[No. 118-40731-1.    Division One.    May 4, 1970.]
Panel 2

EVERETT STONE, *Appellant*, v. SISTERS OF CHARITY OF THE HOUSE OF PROVIDENCE *et al., Respondents.*

608

*Heiman & Samboni* and *Donald R. Douglas,* for appellant.

*Williams, Lanza, Kastner & Gibbs* and *Henry E. Kastner,* for respondents.

HOROWITZ, A. C. J.—Plaintiff, Everett Stone, sued defendants; namely, the doctor, Donald R. Burke (doctor), Alice Engstrom (nurse) and the Sisters of Charity of the House of Providence (hospital) to recover damages for alleged negligence in postoperative care following surgery. The trial court sustained defendants' challenge to the sufficiency of the evidence, dismissed the jury and entered judgment of dismissal with prejudice. Plaintiff appeals.

Dr. Burke performed stomach surgery upon the plaintiff at the Providence Hospital on May 18, 1964. Following the surgery the wound was dressed and upon the doctor's orders, a corset-like binder was applied. The only medical expert testimony concerning the binder came from the defendant Dr. Burke, called as an adverse witness. He testified that the binder "has nothing to do with wound healing or support nor will it prevent anything from happening . . . we want the patient to cough. There are many surgeons who feel a binder is a restrictive mechanism and do not apply it . . ." The plaintiff's binder was changed daily when the dressing on the wound was changed, sometimes by the doctor and sometimes by the nurse. The plaintiff did not cough when the binder was in place during the first 14 postoperative days. Some infection developed in the wound and an asthma-like respiratory ailment appeared, detrimental to the surgery wound. However, stitches were finally removed. On the day this was done, Dr. Burke removed the binder and it was off for approximately an hour.

In leaving, Dr. Burke told the nurse to replace the binder. The nurse then started to put the binder back on, but noticing it was wrinkled, started to leave the room to get a fresh binder. As she did so, plaintiff felt a tickle in his throat coming on and started to call the nurse back, but the evidence does not show whether she heard him call, and she kept on going. She returned with a fresh binder in 4 to 5 minutes. While the nurse was gone, plaintiff coughed and the surgery wound ruptured or eviscerated. Immediate surgery was performed to close the wound and repair the bowel that had been severed when the wound ruptured. Eight or 10 days following the second surgery, the wound opened by itself.

At the conclusion of plaintiff's case, the trial court sustained defendants' challenge to the sufficiency of the evidence on the ground that the plaintiff had failed to show negligence of any of the defendants. Plaintiff's sole claim of negligence is based on the action of the nurse in leaving the plaintiff in his hospital bed in the hospital room while she went out of the room to obtain a fresh binder to replace his wrinkled one. The resolution of this question depends on whether the claimed negligence of the nurse was required to be shown by expert testimony. Plaintiff offered none.

■■ The defendants' challenge to the sufficiency of the evidence " 'admits the truth of the opposing party's evidence and all inferences that reasonably can be drawn therefrom and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the party against whom the motion is made.' " (*Hellriegel v. Tholl*, 69 Wn.2d 97, 98, 417 P.2d 362 (1966)). Accordingly, plaintiff not being bound by Dr. Burke's unfavorable testimony, he testifying as an adverse witness (*Isaacs v. National Bank of Commerce*, 50 Wn.2d 548, 313 P.2d 684 (1957)), we do not consider it for purposes of the challenge. *Smith v. Leber*, 34 Wn.2d 611, 209 P.2d 297 (1949), and *Hellriegel v. Tholl, supra.*

In the performance of her professional duties, a nurse must exercise reasonable care to see that no unnecessary

harm comes to her patient. Annot., 51 A.L.R.2d 970, 972 (1957). On the principles of respondeat superior, the hospital and doctor may each be liable for acts of the hospital nurse. *Pierce v. Yakima Valley Memorial Hosp. Ass'n,* 43 Wn.2d 162, 260 P.2d 765 (1953); 40 Am. Jur. 2d *Hospitals and Asylums* § 29 (1968); Annot., 12 A.L.R.3d 1017 (1967). See *Kemalyan v. Henderson,* 45 Wn.2d 693, 277 P.2d 372 (1954). See also Annot., 69 A.L.R.2d 305 (1960). If, however, the nurse is not negligent, we do not reach the question of vicarious liability of the hospital or doctor for the nurse's acts. See *Roth v. Havens, Inc.,* 56 Wn.2d 393, 353 P.2d 159 (1960).

█ Whether the nurse was negligent necessarily requires evidence concerning the function of the binder. The function of the binder and the necessity or advisability of its use in postoperative treatment are medical matters for expert opinion and not matters of which a jury or court can take judicial notice. See Annot., 72 A.L.R.2d 554, 564 (1960). To be the subject of judicial notice the fact

> must be "known"—that is, well established and authoritatively settled, without qualification or contention. It is clear that uncertainty, or widespread difference in belief in respect to the fact in question, will operate to preclude judicial notice thereof.

29 Am. Jur. 2d *Evidence* § 24 (1967). The Washington decisions are summarized in 5 R. Meisenholder, Wash. Prac. §§ 592, 593, 597 (1965). We cannot say that the function of the binder and the advisability of its use are matters that are "well established and authoritatively settled, without qualification or contention." Accordingly, these matters must be established by expert testimony. The doctrine of judicial notice as to the applicable standard of care would be especially inapplicable in an action against a physician who or hospital that must observe the national minimum standard of care. *Pederson v. Dumouchel,* 72 Wn.2d 73, 431 P.2d 973 (1967), discussed in 44 Wash. L. Rev. 505 (1969). The national minimum standard is one established "in an area coextensive with the medical and professional means avail-

able in those centers that are readily accessible for appropriate treatment of the patient." (*Pederson v. Dumouchel, supra*, at 79.) Whether we apply the national minimum standard or the standard of care in the locality or similar locality with respect to the care owed by a nurse, judicial notice of that standard cannot be taken.

If the doctrine of judicial notice is not applicable and if, accordingly, the claimed negligence is not "so grossly apparent that a layman would have no difficulty in recognizing it as a departure from prevailing standards." (*Stafford v. Hunter*, 66 Wn.2d 269, 270, 401 P.2d 986 (1965); *Cochran v. Harrison Memorial Hosp.*, 42 Wn.2d 264, 267, 254 P.2d 752 (1953)), then expert testimony is essential to a showing of " 'an act or omission by the defendant which breaches a standard of care owed by him to the plaintiff, which breach is the cause, both in fact and proximately, of damage to the plaintiff.' " (*Hayes v. Hulswit*, 73 Wn.2d 796, 797, 440 P.2d 849 (1968)). A bad result is not in itself evidence of negligence (*Teig v. St. John's Hosp.*, 63 Wn.2d 369, 387 P.2d 527 (1963)), nor is a mere difference of professional opinion as to a diagnosis or treatment, evidence of negligence. *Hayes v. Hulswit, supra.* Furthermore, the case here cannot be said to be one involving negligence per se as in the case of a surgical instrument left in a patient's body. *Conrad v. Lakewood Gen. Hosp.*, 67 Wn.2d 934, 410 P.2d 785, 10 A.L.R.3d 1 (1966). As was pointed out in *Tompkins v. Gering*, 64 Wn.2d 389, 392, 391 P.2d 957 (1964), a water skiing injury action, without expert opinion evidence whose existence is essential to the determination of whether the applicable standard has been violated, the lay trier of the fact is left "with no criteria by which negligence, or its absence, may be measured." A similar principle is applied in medical malpractice cases. *Hill v. Parker*, 12 Wn.2d 517, 530, 122 P.2d 476 (1942); *Roth v. Havens, Inc., supra*, at 398.

Plaintiff had the burden of proving that the binder would have prevented or contained the coughing so as to prevent the wound from opening or that the coughing was the

proximate cause of the wound opening; or that the presence of the nurse would have prevented the plaintiff from coughing or would have prevented the wound from opening once the coughing started. *Roth v. Havens, Inc., supra; Cochran v. Harrison Memorial Hosp., supra;* 70 C.J.S. *Physicians and Surgeons* § 62 b. (1951); 40 Am. Jur. 2d *Hospitals and Asylums* § 40 (1968). See Annot., 51 A.L.R.2d 970 (1957). Indeed, there was evidence that 8 to 10 days after the repair operation, the wound opened by itself. In the absence of evidence from which the jury could infer that the nurse was negligent in leaving the room for 4 or 5 minutes to obtain a replacement binder, considering its function and purpose, the court properly sustained the challenge to the sufficiency of the evidence. *Roth v. Havens, Inc., supra.*

■ Plaintiff, however, contends that the court should have given effect to the doctrine of res ipsa loquitur and, accordingly, denied the challenge. We do not agree. There is no doubt that the doctrine of res ipsa loquitur is applicable to a physician, a hospital and nurse. *Leach v. Ellensburg Hosp. Ass'n, Inc.,* 65 Wn.2d 925, 400 P.2d 611 (1965); *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 382 P.2d 518 (1963); *Pederson v. Dumouchel, supra;* Annot., 9 A.L.R.3d 1315 (1966); Annot., 51 A.L.R.2d 970, 973 (1957). There must be evidence sufficient to permit the jury to draw the inference that negligence exists. An essential ingredient of the doctrine of res ipsa loquitur is that "the accident or occurrence producing the injury [must be] of a kind which ordinarily does not happen in the absence of someone's negligence . . ." (*Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc., supra*). There was no such evidence here and, accordingly, the doctrine cannot be used to establish negligence. *Pederson v. Dumouchel, supra; Shoberg v. Kelly,* 1 Wn. App. 673, 463 P.2d 280 (1969). See *Nelson v. Murphy,* 42 Wn.2d 737, 258 P.2d 472 (1953); *Olson v. Weitz,* 37 Wn.2d 70, 221 P.2d 537 (1950); Annot., 9 A.L.R.3d 1315, 1324 (1966); Annot., 82 A.L.R.2d 1262, 1293 (1962); *The Application of Res Ipsa*

*Loquitur in Medical Malpractice Cases*, 60 N.W. L. Rev. 852, 857, 860, 861, 864, 865 (1965-66). Without other evidence of negligence—of which there is none here—plaintiff cannot recover. *Cochran v. Harrison Memorial Hosp., supra; Roth v. Havens, Inc.*, 56 Wn.2d 393, 353 P.2d 159 (1960).

The judgment is affirmed.

WILLIAMS and UTTER, JJ., concur.