ANDREW J. KNIGHT, *as Executor, et al., Respondents,* v.
TROGDON TRUCK COMPANY *et al., Appellants.*[1]

[1]Reported in 71 P. (2d) 1003.

*Ballinger, Hutson & Boldt,* for appellants.

*Shank, Belt, Rode & Cook* and *Ray Derham,* for respondents.

BEALS, J.—Shortly before six o'clock in the afternoon of August 4, 1932, George W. Stuber was driving his model A Ford sedan in a westerly direction up a three or four per cent grade on the Vantage Ferry road, about three miles west of the Vantage bridge, in Kittitas county. The road was gravel surface, about seventeen feet having been oiled for traffic, and having hard surface shoulders on each side, two or three feet in width, beyond the oiled surface. The road was winding, and Mr. Stuber was driving at thirty miles per hour. Three persons were riding with him, Mrs. Tesseyman sitting beside him on the front seat, and Ralph Knight and Charles Tesseyman on the back seat. The afternoon was hot and dry, and the low western sun was shining brightly through the windshields of westbound cars.

A ten-ton Sterling truck, owned by defendant Trogdon Truck Company, Inc., and driven by defendant C. W. Ballard, with whom was riding Clair Bickle, both employees of Trogdon, in charge of the truck, was bound westward up the same road ahead of the Stuber car. Attached to the truck was a two-wheel trailer, the truck and trailer carrying a heavy load of machinery, cable rolled on large red spools, etc. The gross weight of the truck, trailer and load approximated 52,500 pounds. As a bed for the load, several large timbers, thirty-two and forty feet in length, had been laid on the body of the truck and across the bolster of the trailer, the entire length of the truck and trailer approximating fifty-five feet. The two forty-foot tim-

bers, one on the right and one on the left side of the load, projected ten or twelve feet back over the end of the bolster of the trailer.

Mr. Stuber, driving his Ford up the hill on his right-hand side of the highway, at the rate of thirty miles an hour, did not see the truck and trailer until, as he testified, he was within ten feet of the projecting timbers. He could not then avoid a collision, and the Ford impaled itself upon one of the timbers, which completely wrecked the car. Mrs. Tesseyman and Mr. Knight were killed, and Mr. Tesseyman and Mr. Stuber injured.

August 1, 1935, four actions were commenced to recover damages occasioned by the accident. Mr. Stuber sued on account of his own injuries. Andrew J. Knight, as executor of Ralph C. Knight's will, sued to recover for Mr. Knight's death. The administratrix of Mrs. Tesseyman's estate sought a recovery for her death, and Mr. Tesseyman sued to recover for his own injuries. The cases were consolidated and tried to a jury, which returned verdicts in the defendants' favor in the action brought by Mr. Stuber and in that brought to recover damages on account of Mrs. Tesseyman's death. A verdict was returned in favor of Mr. Tesseyman in his personal action, and in favor of Andrew J. Knight, as executor. Pursuant to the verdicts, judgments were entered dismissing the cases in which the jury returned verdicts in favor of the defendants, and judgments were entered in favor of the plaintiffs in the other two actions. No appeals were taken from the judgments of dismissal, but from the two judgments rendered against them, defendants have appealed.

The cases have been consolidated for hearing in this court. Error is assigned upon the ruling of the trial court denying appellants' challenge to the sufficiency

of the evidence; upon the court's ruling denying appellants' motion for directed verdicts in their favor; upon the denial of appellants' motion for judgment in their favor notwithstanding the verdict; and upon the entry of judgments in respondents' favor.

Appellants contend, first, that the evidence discloses no negligence on their part; second, that there was no causal relationship between their alleged negligence and the collision; third, that the evidence affirmatively established contributory negligence on the part of all four persons riding in the Stuber car; and last, that there was no sufficient evidence of dependency in the case brought by Andrew J. Knight, as executor. Respondents contend that appellants were negligent in that their truck was unlawfully stopped on the highway prior to and at the time of the collision, and that portions thereof, and of the load, stood on and projected over to the left of the center line of the highway, and that the vehicles did not bear warning flags or signals, as required by law.

At the outset, it should be observed that respondents are correct in contending that, in ruling upon a challenge to the sufficiency of the evidence, a defendant's motion for a directed verdict in his favor, or motion for a judgment notwithstanding the verdict, no element of discretion is involved, and such a motion can be granted only when it can be held as matter of law that there is no evidence or reasonable inference from evidence to sustain a verdict in the plaintiff's favor.

Appellants Bickle and Ballard testified that the truck never stopped after leaving Vantage, but on the contrary was continually in motion, although at a low rate of speed, and remained continuously upon its right-hand side of the roadway. Mr. Stuber testified both by deposition and as a witness at the trial that he saw

neither truck nor trailer, nor had any intimation of their presence on the highway, until his own car was ten feet from the end of the projecting timbers. This short distance his car would travel in less than half a second.

Mr. Stuber testified that his car was in practically perfect mechanical condition, though not equipped with a sun visor; that, after leaving Vantage, he noticed at different places shadows on the road, cast by banks on its side, or high ground beyond, caused by the setting sun, which tended to obscure objects within such shadows; that he was driving at thirty miles an hour, which speed he consistently maintained until the impact, and that, as he rounded a curve, he saw a shadow across the road about three or four hundred feet ahead of him, into which he could not see, although he could see the road beyond it; that he saw no approaching traffic, and entered the shadowed space, when he suddenly saw the truck looming up ten feet ahead of him; that he attempted to put on his brake and swerve to his left, but could not avoid the accident, which occurred almost instantly, in a fraction of a second. The witness stated that he turned the steering wheel, but did not know whether or not the machine had responded to any extent.

He further testified that about a foot and a half of the timbers projected over the south (his left) half of the highway, and that the left wheel of the trailer was just across on his left-hand side of the center of the road; that the right-hand side of his radiator struck the left-hand timber, which came clear through the car from the right front to the left rear. On cross-examination, he stated that, had he seen the truck, he could have passed it. The witness also testified that he did not know whether there was a center line on the highway, and that he determined the center by "judging

the distance," manifestly a matter of difficulty on a graveled road, partially oiled.

The impact was so violent that the Ford pushed itself along the timber so far that its front axle struck the left-hand wheel of the trailer, bending it badly and twisting the heavy steel axle. The blow was of sufficient force to break the trailer reach, a second growth timber log about ten inches in diameter, which broke just in front of the trailer coupling. The only evidence that, at the time of the accident, the truck was standing still was given by Mr. Stuber, who testified:

"Q. Now, at the time of the crash, Mr. Stuber, was that truck moving or stopped? A. It was stopped. Q. Was the engine running or was it standing still? A. I think the engine was stopped. . . . When it hit I came down and hit the wheel right across there (witness indicates face), and came right up, and when I came up everything was still. Q. At that time did you hear any motors running of any kind? A. No. Q. Either in the car or the truck? A. No. Q. What happened next? A. Well, one of the boys jumped out of the truck and came running back, and I tried to get the door open but I couldn't, so he opened the door and yanked the door open, and I couldn't get out, so I turned in my seat like that (indicating), and he reached around me and pulled me out of the car, and when he reached around me I passed out. I was unconscious, and they laid me on the side of the road. Q. What caused you to go out? A. The broken ribs, the pressure on the heart. Q. And pain? A. Yes."

The witness also testified on cross-examination:

"Q. Now, Mr. Stuber, as a matter of fact you did not see this other vehicle at all before you hit it, did you? A. I saw it just coming up in front of me. Q. Just a split flash of a second; is that true? A. Yes. Q. And you have now estimated that it was ten feet away when you first saw it? A. Yes. Q. That would be something less than the length of your Ford car, wouldn't it? A. Yes. Q. And going at thirty miles an hour would be just a very small fraction of a second,

wouldn't it? A. Yes. Q. Now, the only basis for which you have to testify, and the only basis you have testified as to the position of the truck and where it was and what it was doing, was predicated on that split second's observation; isn't that correct? A. Yes."

Mr. Stuber and appellants Bickle and Ballard were the only witnesses who testified as to the position on the highway of the truck and trailer prior to the impact. Mr. Stuber stated that his statements were based upon observations which he made after the accident, frankly admitting that "his observation at the time was not very good." As to Mr. Stuber's condition after the accident, a witness on behalf of respondents, who arrived on the scene very soon after the crash, testified on cross-examination:

"Q. Did you talk to the driver, Mr. Stuber? A. Well, no. Q. Did he talk to you? A. Yes. Q. What did he say? A. He looked up to me and he seemed to be in rather a dazed condition, and said, 'I don't believe I ever saw that truck,' and that is all he said to me;"

and on re-direct examination:

"Q. And after he said that what happened? A. He kind of laid over a little bit, and we laid him down on some bushes; he had been sitting up. Q. He looked up and said, 'I don't believe I ever saw that truck,' and then he keeled over. Was he unconscious? A. He wasn't exactly out when he keeled over, but just seemed to lose his strength, and we had to stretch him out. Q. He just seemed to lose his strength and you had to stretch him out. He was pretty badly hurt, wasn't he? A. He seemed to be."

Several witnesses testified that, after the crash, the left rear wheel of the trailer was a few inches to the south of the center of the highway, and that the end of the left-hand timber projected from one to three feet over the south half of the road. All the witnesses who testified as to the position of the truck after the acci-

dent stated that all of its wheels were standing on its right-hand side of the highway, the rear wheels directly tracking with the front.

Mr. Stuber also testified that he rounded a curve in the road about three hundred feet from the point of collision; that, upon rounding the curve, he had a clear view of the road ahead for a considerable distance, well past the shadow.

It was incumbent upon respondents to prove negligence on the part of appellants. This court has refused to follow some other courts in holding that a scintilla of evidence is sufficient to carry a case to the jury. In *Davison v. Snohomish County,* 149 Wash. 109, 270 Pac. 422, we said:

"This court has repudiated 'the scintilla of evidence' doctrine, and has held that evidence sufficient to support a verdict must be substantial; *Ziomko v. Puget Sound Elec. R.,* 112 Wash. 426, 192 Pac. 1009, and *Adams v. Anderson & Middleton Lum. Co.,* 124 Wash. 356, 214 Pac. 835; . . . "

The later cases of *Thomson v. Virginia Mason Hospital,* 152 Wash. 297, 277 Pac. 691; *Cartwright v. Boyce,* 167 Wash. 175, 8 P. (2d) 968; and *DeTemple v. Schafer Bros. Logging Co.,* 169 Wash. 102, 13 P. (2d) 446, are to the same effect.

The only testimony which even suggests that appellants' truck had stopped upon the highway before the collision is found in the evidence of Mr. Stuber, who stated that the truck was standing still. As above set forth, this witness also testified that he did not see the truck until he was within ten feet of the end of the timber upon which the Ford was impaled, at which time his car was moving at thirty miles an hour, and the sun was shining in his eyes. It is impossible to imagine that, in the small fraction of a second between the time Mr. Stuber saw the obstruction and the crash,

his mind functioned further than to initiate a desperate attempt to put on his brakes and turn to the left, and to realize to some small extent the horror of the situation. It is beyond belief that his mind could register any definite impression as to whether or not the truck was moving at a slow rate of speed or standing still. His own car was moving rapidly, and the situation was manifestly such as to preclude the formation of any intelligent opinion by Mr. Stuber upon the point under discussion.

It is easy to understand that, after the accident, and when his mind had again begun to function, he might have believed that the truck had been standing still. His own interest and that of his friends were greatly benefited by this belief, and his mind naturally, although possibly to some extent unconsciously, would seek any excuse which might relieve him even to some small extent from the feeling of responsibility for the terrible results which had been caused by his gross carelessness.

Messrs. Stuber and Tesseyman both testified that, after the collision, they did not hear the motor of the truck functioning, but this testimony does not amount to even a scintilla of evidence. Both men were badly hurt, Mr. Stuber soon lapsing into unconsciousness, and, according to the evidence introduced by appellants, the truck stopped almost immediately after the crash.

Respondents argue that, as there is in the record evidence to the effect that both the right front and rear wheels of the truck were to the right of the oiled portion of the pavement, and that the left wheel of the trailer was close to, or even over, the center of the road, the long timbers would have been moving from left to right across Mr. Stuber's line of vision, and that therefore the motion of the timbers would have at-

tracted his attention. We cannot follow this argument. Assuming that the truck and trailer were in the position contended for by respondents, the rapid motion of the Ford, the lack of time, and Mr. Stuber's effort to turn his car to the left, combined with the other factors present, would have prevented any slow movement of the trailer and timbers from registering any impression upon Mr. Stuber's mind. It should be noted that Mr. Stuber did not say that he particularly observed the timbers; he simply said the truck had stopped.

Respondents also rely upon Mr. Stuber's negative answer to the question as to whether he knew whether or not the engine of the truck was running before the crash. Respondents argue that this answer was in effect an affirmative statement that the witness did not hear the noise from the engine. In view of all the evidence, the inference which respondents seek to draw from this disclaimer of knowledge by Mr. Stuber does not follow, and no such theory can be invoked to aid respondents.

On the other hand, evidence introduced on behalf of appellants was direct and positive to the effect that the truck was at all times moving slowly up the incline, and that both appellants Bickle and Ballard were on the truck until after the accident. Appellant's evidence as to this latter fact is corroborated by testimony introduced by respondents.

We hold that the record discloses not even a scintilla of evidence which affords any basis for a finding by the trier of the facts that appellants' truck was standing still at the time of the collision.

Upon the question as to whether or not any portion of the trailer or the long timbers rested upon or projected over the south half of the road prior to the accident, the only testimony that such was the case

is found in the evidence of Mr. Stuber. This witness, Mr. Tesseyman, and two other witnesses testified that, after the impact, the left rear wheel of the trailer was six or eight inches, and the end of the left-hand timber from one to four feet, to the left of the center of the highway. This highway was not paved. The evidence strongly indicates that, at the place of the accident, there was no mark indicating its center. Approximately seventeen feet of the road had been oiled. Mr. Stuber's testimony to the effect that, approaching the truck from the rear, he, in the split second between his first view of the truck and the crash, could tell the position of the left rear wheel of the trailer, and that the end of the left timber projected a foot or so over the center of the road, is incredible and does not merit serious consideration.

The position of the trailer wheel and timbers after the impact is unimportant, as the terrific blow struck the timber and wheel would naturally throw them somewhat to the left. The timber struck the right side of the radiator, and went through the car from right to left. The force of the blow then would have a tendency to force the timber over the center of the road. After the impact, both the front and rear wheels of the truck stood well to the right of the center of the road, the rear wheels tracking with the front. On cross-examination, Mr. Tesseyman testified that what was referred to as the "bunk" or "bolster" of the trailer, being that part of the rear of the trailer upon which the load rested, was by the impact of the collision pushed forward under the load, and that the entire trailer had been pushed forward so that it and its load were no longer in the usual relative position one to the other.

In the case of *Morton v. Mooney*, 97 Mont. 1, 33 P. (2d) 262, the supreme court of Montana considered a

state of facts very similar to that here presented. It appeared that a truck had broken down and was stopped on the highway, the visibility being poor because of fog. The plaintiff, proceeding in the same direction as the truck, collided with it, and sued for damages resulting from the collision. The plaintiff testified that he was proceeding more slowly than was Mr. Stuber, and that he saw the truck when twenty feet distant. The court held that, in view of the limited time available to plaintiff for observation, and in consideration of the violence and direction of the blow, evidence as to the position of the truck after the accident was not substantial evidence as to the alleged unlawful position of the truck upon the highway prior to the impact. In the course of its opinion, the court said:

"It is true that where the record presents a conflict in the evidence, resolved by the jury in favor of the plaintiff, the action of the jury precludes this court from disturbing the verdict [citing cases], but this is true only when there is substantial evidence in the record to support the verdict and judgment. [Citing cases.] Substantial evidence is such as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiff's case, and if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence. [Citing cases.]

"Viewing the evidence in the light most favorable to the plaintiff, as we must where, as here, motions for nonsuit and directed verdict were denied [citing cases], yet we must say that, although the plaintiff swore positively to the position of the cars at the time of the accident, which position would prove negligence, in the face of the physical facts, the impossibility of the cars being in that position and still be struck from the rear, all reasonable men must conclude that this evidence does not establish plaintiff's case.

"While the jurors are the sole judges of the facts, the question as to whether or not there is substantial evi-

dence in support of the plaintiff's case is always a question of law for the court (*Grant v. Chicago etc. Ry. Co.*, 78 Mont. 97, 252 Pac. 382), and in determining this question, 'the credulity of courts is not to be deemed commensurate with the facility and vehemence with which a witness swears. "It is a wild conceit that any court of justice is bound by mere swearing. It is swearing creditably that is to conclude its judgment." ' "

We conclude that the record contains no substantial evidence from which the jury might find that any portion of the trailer or timbers projected over the south half of the road before or at the time of the collision.

In any event, as we said in the case of *Thomas v. Adams*, 174 Wash. 118, 24 P. (2d) 432,

"The only time when the occupancy of the wrong side of the highway becomes important in a case such as this is when it interferes with, or imperils, those who are rightfully there;"

and clearly, even if the end of the left-hand timber was projecting a few inches over the center of the road, this fact had nothing whatever to do with the accident.

As to the matter of warning flags, respondents' own witnesses testified that such flags were present. Mr. Stuber testified that, before the accident, he saw no flag, and probably any flag which was in position on the end of the timber which went through the Ford car would have been torn off or displaced. The evidence shows beyond question that there was a flag on the end of the other timber and one on the reach. Beyond question, pieces of red bunting were displayed upon the end of the load, and we find nothing in the record which justifies a finding that appellants had been negligent in placing or failing to place such warning signals, or that any greater amount of red bunting on the rear of the load would have had the slightest influence in preventing the accident.

Examination of the record convinces us that the same contains no evidence which rises beyond the dignity of a mere scintilla as to any negligence on the part of appellants, which rendered them liable in these actions. The trial court accordingly erred in failing to grant appellants' motions for judgments in their favor as matter of law, and the judgments appealed from are reversed, with directions to dismiss the actions.

STEINERT, C. J., MAIN, and ROBINSON, JJ., concur.

HOLCOMB, J. (dissenting)—The prevailing opinion is a palpable invasion by this court of the functions of the trial court and jury. The probabilities and plausibility of the testimony of the interested witnesses, even that of Stuber, a most interested witness, was for the jury. There was much more than a scintilla of evidence here. The trial judge, having heard the witness, sustained the verdict of the jury.

This case is different in its facts from the cases cited to sustain the prevailing opinion.

The judgments should be affirmed. I therefore dissent.