[No. 36694.   Department Two.   May 7, 1964.]

ERVIN SCHORZMAN, *Appellant*, v. MELVIN BROWN *et al.*, *Respondents*.*

*Arthur W. Kirschenmann*, for appellant.

*Brethorst, Fowler, Bateman, Reed & McClure* and *J. Edwin Thonn*, for respondents.

DONWORTH, J.—The sole issue on this appeal is whether there was substantial evidence to support the verdict of the jury for the plaintiff. If there is such substantial evidence, the trial court's granting of respondents' motion for a judgment notwithstanding the verdict was erroneous.

*Reported in 391 P. (2d) 987.

This suit arose out of a truck accident in which plaintiff appellant was injured when the truck he was driving as an employee of the owners (defendants-respondents), went out of control on the Vantage Grade on Highway 10 and plunged over a cliff. Appellant brought this action, alleging, in his complaint, a defect in the steering mechanism which caused the truck to go out of control and over the cliff. He further alleged that respondents were negligent in that they failed to inspect, or to have inspected, the steering mechanism; that they failed to warn appellant of the existence of such defect, when it could have been discovered by a reasonable inspection, and that they furnished an unsafe vehicle for appellant to drive. Respondents denied the principal allegations and the case went to trial before the court and jury.

At the close of all the evidence, respondents' motion for a directed verdict was denied. The jury returned a verdict for appellant in the amount of $5,036.40. The trial court then granted respondents' motion for judgment notwithstanding the verdict. From the judgment of dismissal, entered upon the granting of the motion, this appeal is taken.

On the morning of April 15, 1960, appellant traveled with a Mrs. Flynn, a friend, in her automobile to the ranch of respondents located near Quincy. He was employed to drive a 5-ton load of potatoes to Ellensburg or to the Yakima area, or wherever the load could be sold. Upon arriving at the ranch, appellant was told that the truck had just been serviced with gas and oil for the trip and that the lights and everything were all right. Appellant was given no further information concerning the condition of the truck. He remained at the ranch for about 15 minutes, and then left on his journey following various roads until he entered Highway 10 at Burke Junction.

Appellant described the events just prior to and including the accident as follows:

"Q. After you got on Highway 10, what speed did you travel? A. After I got off the rough road, I got up to somewheres between 35 miles an hour and 40 miles an hour. Q. How far did you travel maintaining that speed? A. Until just before I started down the Vantage Grade. Q. That

would be about how many miles? A. I believe it was six miles from the junction there on Highway 10 and 7 to where you start down the grade. Q. You stated that you then reduced your speed? A. Yes. Q. To what extent? A. I reduced my speed to about 30 miles an hour. Q. Did you maintain that speed until the time of the accident? A. That or less, yes. Q. Now, after you reduced your speed to 30 miles an hour, go ahead and tell the court and jury in detail what happened. A. Well, I have traveled that road many times before with my own truck while I was farming, hauling my own hay to the Seattle area so knew the road real well. But I started down the grade and I know I was in high gear in regular transmission and in the low range in the two speed transmission. There was no actual cause for me to shift down any lower, because I could hit the brakes occasionally and keep my speed reduced. After coming down to this area to this sand bunker, or shortly past it, all of a sudden the truck made a sharp dart to the left. I couldn't imagine what was going wrong with it. I hung onto the wheel and for a second it felt like it was going to straighten out. And all of a sudden it made a sharp dart to the right and I was afraid of going over the hill and cramped the wheel. It went to the left, again, and another to the right and hit the guardrail. . . ."

The truck then went through the guardrail and rolled to the bottom of a 400-foot cliff. Appellant had remained in the truck throughout its descent and was seriously injured.

Mrs. Flynn, just prior to the accident, was driving her own car directly behind the truck. She corroborated appellant's testimony as to the actions of the truck just before it went through the guardrail.

Appellant testified in substance that he attempted to apply the brakes (which were working properly), but things were happening so fast that he was more intent on controlling the steering of the truck than trying to stop it; that he was holding the steering wheel with both hands, as he normally would; and that he knew something had come loose from the steering mechanism, because that could be the only reason for the steering difficulty.

To further support his position that there was some defect in the steering, appellant related a conversation, which took place at the hospital after the accident, between himself

and respondent Mr. Brown, in which Mr. Brown was alleged to have said that he did not know what was wrong with the truck, and that he had had it in garages for repairs several times to have the front end fixed, but that nobody was able to do it any good. Mr. Brown denied having made such a statement to appellant.

Mr. Brown was called by appellant as an adverse witness and testified in substance that the truck was a 1947 Ford, 2-ton, flatbed truck, with a little over 39,000 miles on the speedometer at the time of the accident. He had bought the truck new in 1947, and about a month after the purchase he had had the steering mechanism inspected in Ellensburg and again, 2 years later, in Yakima. A final inspection was made in Quincy in 1955 (which was about five years before the accident). The repair shops had explained to him that the hard steering was a characteristic of that year and model truck. He further testified, as his own witness, that, while the truck tended to wander, it could be kept on the road easily by holding the steering wheel firmly, and that it had never left the road before. Appellant was not informed, prior to leaving with the load of potatoes, of the tendency of the truck to wander.

The foregoing outline of the evidence includes substantially all evidence favorable to appellant's contentions. We do not set out respondents' conflicting evidence, for, as the following cases hold, in passing upon a motion for judgment n.o.v., the court must consider only the evidence most favorable to the nonmoving party and the inferences reasonably drawn therefrom.

Appellant and respondents agree that the case of *Arnold v. Sanstol,* 43 Wn. (2d) 94, 260 P. (2d) 327 (1953), should be controlling in this case on review. As that case states, we must view all the evidence and every reasonable inference therefrom in a light most favorable to appellant, and, if substantial evidence exists to support the jury verdict, the judgment notwithstanding the verdict should be reversed. *Cf. Fannin v. Roe,* 62 Wn. (2d) 239, 382 P. (2d) 264 (1963), and *Helman v. Sacred Heart Hospital,* 62 Wn. (2d) 136, 381 P. (2d) 605 (1963).

Viewing the evidence in accordance with the rules set forth in the *Arnold* case, we think the following items could be found or reasonably inferred. First, appellant was employed by respondents to drive their truckload of potatoes on the day of the accident. Second, the truck had abnormal handling characteristics of which respondents were aware prior to the accident. Third, respondents had made no inspection of the steering apparatus of the truck for a 5-year period before the accident. Fourth, respondents did not warn appellant of the unusual steering characteristic of the truck. Whether or not there was substantial evidence of an actual defect, there was such evidence from which the jury could have found that respondents were negligent in turning this truck over to appellant without warning him thereof, and that such failure was a proximate cause of the accident.

In the case of *Lauber v. Lyon,* 188 Wash. 644, 63 P. (2d) 389 (1936), involving a head-on collision between two automobiles, this court held that the question of whether a latent defect was the cause of the accident (thus removing liability, as opposed to imposing it here) is one for the jury and the verdict for the plaintiff foreclosed any question as to any alleged cause.

*Currier v. Abbott,* 104 N. H. 299, 185 A. (2d) 263 (1962), involved a case where two trucks collided, with one swerving slightly before the impact. The court there held that the trial court properly refused to withdraw the case from the jury where there was evidence that the steering mechanism was broken after the accident and that the steering was giving the driver difficulty in controlling the truck prior to the accident.

See, generally, the annotation in 23 A.L.R. (2d) 539 (1952).

We do not think *Glinski v. Szylling,* 358 Mich. 182, 99 N. W. (2d) 637 (1959), cited by respondents, is persuasive here because the jury in the present case could find a causal connection between the steering problem and the truck going off the cliff.

When appellant's evidence is considered with the foregoing cases in mind, it cannot be characterized as overwhelming, but it is substantial (*i.e.* more than a scintilla), and since the evidence was conflicting upon the principal issue, we think the jury could find that there existed a steering defect of which appellant should have been warned by his employer. In such a situation, once the jury has reached its verdict, any inquiry by the court is foreclosed, unless, as a matter of law, the court can say there is no competent evidence or reasonable inference therefrom to support the jury's finding in favor of the nonmoving party. See, also, *Grange v. Finlay,* 58 Wn. (2d) 528, 364 P. (2d) 234 (1961).

In granting respondents' motion for judgment n.o.v., the trial court did not, either in its order or otherwise, indicate wherein it felt that appellant's evidence, as a matter of law, was not substantial. The order referred to the court's previous denial of respondents' motion for a directed verdict at the close of all the evidence[1] and the jury's subsequent verdict in favor of appellant. The order stated that respondents' motion for new trial was denied but that their motion for judgment n.o.v. was granted.

For the above-stated reasons, we hold that the judgment of the trial court must be reversed and the case remanded with directions to enter a judgment on the jury's verdict. It is so ordered.

OTT, C. J., FINLEY and HAMILTON, JJ., and MURRAY, J. Pro Tem., concur.

July 2, 1964. Petition for rehearing denied.

---

[1] In denying the motion for directed verdict, the court said:

"The record may show the Defendants' Motion is overruled. I agree with you, should the jury return a verdict for the plaintiff, the court will give it a long look at that time as to granting a N.O.V. However, I do feel, as you stated, also, the length of time we have spent and also the financial ability of the plaintiff to appeal this matter should he wish to do so, should the court dismiss the case at this time, maybe justice wouldn't be done and he wouldn't be able to afford the cost of an appeal. I certainly have confidence in the jury system and feel with the instructions and the law, we will just let the ball bounce and see what happens. . . ."