[No. 38138.    Department One.    December 15, 1967.]

MARGARET VERSTEEG, *Appellant,* v. CHARLES MOWERY *et al.,*
*Respondents.**

*Schroeter, Farris, Bangs & Horowitz,* by *Donald J. Horowitz,* for appellant.

*Williams, Lanza, Kastner & Gibbs* and *Joseph J. Lanza,* for respondents.

LANGENBACH, J.† This is an appeal from a judg-

*Reported in 435 P.2d 540.

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

ment dismissing plaintiff's claim for the reason that she failed to establish a prima facie case of medical negligence. The prima facie case in negligence is the showing of an act or omission by the defendant which breaches a standard of care owed by him to the plaintiff, which breach is the cause, both in fact and proximately, of damage to the plaintiff. The sole question on appeal is whether plaintiff introduced proof that defendant failed to observe a standard of care owed the plaintiff.

> The burden was upon the plaintiff to prove one or more of the allegations of negligence and that such negligence was the cause of her disability. It is well settled that, before a physician or surgeon may be held liable for malpractice, he must have done something in the treatment of his patient which the recognized standard of medical practice in his community forbids in such cases, or he must have neglected to do something required by that standard. In order to sustain a judgment against a physician or surgeon, the standard of medical practice in the community must be shown, and, further, that the doctor failed to follow the methods prescribed by that standard. Negligence on the part of the physician or surgeon by reason of his departure from the recognized standard of practice must be established by medical testimony. An exception to this rule is recognized where the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. *Richison v. Nunn,* 57 Wn.2d 1, 4, 340 P.2d 793 (1959); *cert. denied,* 364 U.S. 816 (1960).

*Teig v. St. John's Hosp.,* 63 Wn.2d 369, 387 P.2d 527 (1963); *Stafford v. Hunter,* 66 Wn.2d 269, 401 P.2d 986 (1965). Did the plaintiff show the recognized standard of medical care and practice? The record reveals the following information.

The defendant held himself out as a specialist in plastic and reconstructive surgery in Seattle. In 1958 the plaintiff wrote him about breast augmentation surgery. She also discussed the matter with another plastic surgeon in Seattle. In 1959 she desired to have defendant perform such surgery. Defendant examined her, recommended that such surgery be performed, undertook preoperative care and in

September of that year performed the surgery. He also undertook post-operative care and treatment.

Plaintiff was hospitalized during the surgery. The surgery was accomplished by the insertion of a breast implant (prosthesis) under each of her breasts. The breast implants used by defendant were of a type developed by a plastic and reconstructive surgeon in Beverly Hills, California; Dr. Pangman. The implants came in a special container together with written instructions from Dr. Pangman concerning their use.

Following the surgery, plaintiff did not desire to stay very long in the hospital because of the expense. She went home 3 days after surgery with a slight fever. She said she had competent care at home. She returned from time to time to the defendant's office for dressings and treatment. During this time the incision under her left breast never completely healed. (No problems arose from the implant under the right breast.) Within 12 days an infection had developed. This caused her pain, discomfort and emotional reactions. It also caused her some loss of employment as a beautician. Because the condition did not seem to improve, and because she opposed the removal of the implant, as suggested by defendant, she later went to another physician. This physician finally did remove the implant. The present action followed.

To prove her case plaintiff offered, in addition to her own testimony, (1) the testimony of defendant (called as an adverse witness), (2) the testimony of Dr. Brown (a specialist in plastic surgery in Seattle) and (3) a deposition containing testimony of Dr. Pangman (who is described above).

Dr. Mowery testified that there was a basic standard of care with respect to prevention, diagnosis and treatment of infection. He stated that it means the patient should be healthy, in clean surroundings and be given supportive treatment after surgery. He testified that the standard was a general one but that there is a great deal of difference between doctors implementing it.

On the question of standard of care, Dr. Brown's testimony was, in essence: "I can't talk for six or seven other doctors here in Seattle. I don't know what they do." He testified that he was acquainted with the Pangman prostheses and that when he used them he followed Dr. Pangman's instructions religiously. He stated that it would be negligence in his office not to follow these instructions. "But as to whether this constitutes negligence from the standpoint of the over-all picture of the State of Washington or the west coast, I am only one individual. I cannot voice an opinion."

The trial court refused to allow the admission of Dr. Pangman's deposition because there was nothing in it which would show any standard of medical care in the Seattle area. When asked if he knew how the generally accepted practice of cosmetic surgeons in Seattle might differ from his own, Dr. Pangman replied, "I have no idea."

Plaintiff called only one plastic surgeon from Seattle. He stated he did not know what the standard of care for that community was; he could only testify according to his own personal standards. There are five other plastic surgeons in Seattle. Whether any of them could testify as to that community's general standard of care is not known because plaintiff did not call any of them.

Plaintiff spent most of her brief arguing instead that the local standard of care doctrine is unreasonable. The thrust of her argument seemed to be that a doctrine designed to protect the country practitioners can have no applicability to a specialist in a large metropolitan area in an age of instantaneous communications. The logical result of this contention is the conclusion that Dr. Mowery should be held to a national standard of care—that generally exercised by such specialists. Yet, plaintiff offered no evidence of the existence of such a national standard.

In the recent case of *Pederson v. Dumouchel, ante* p. 73, 431 P.2d 973 (1967), this court discarded the "locality rule." That opinion stated at 78, 79:

In *Teig v. St. John's Hosp.*, 63 Wn.2d 369, 387 P.2d 527 (1963), this court approached modifying the "similar locality" rule, for it upheld the admission of expert testimony by a Portland, Oregon doctor in a malpractice action arising in Longview, Washington. The court took judicial notice that Longview and Portland are approximately 50 miles apart. We take further judicial notice that they are not "similar localities or similar communities." It was not necessary for the court to examine the rule, however, for the Portland doctor testified he was familiar with the standards of general practitioners in the vicinity of Portland *and Longview.*

. . . .

A qualified medical or dental practitioner should be subject to liability, in an action for negligence, if he fails to exercise that degree of care and skill which is expected of the average practitioner in the class to which he belongs, acting in the same or similar circumstances. *This standard of care is that established in an area coextensive with the medcial and professional means available in those centers that are readily accessible for appropriate treatment of the patient.* (Italics ours.)

In her brief plaintiff stated:

In this respect, any testimony or evidence relevant to proper care under the circumstances should be considered by the jury in making the factual determination (1) as to the standard of care based upon the legal concept of the reasonable man, and (2) whether there has been a violation of the standard of care.

■ Her argument leads to the conclusion that the standard of care must be left to the jury's determination— "The jury must be allowed to consider and weigh the testimony in light of the various locales rather than having an exclusive rule as to locality." In short, her attack is not so much upon the local standard of care doctrine as it is upon the fact that in medical negligence cases doctors are allowed to testify as to the ultimate fact of what constitutes due care, a question generally left to the jury. She argued that the same jury is able, upon hearing testimony of different doctors, to decide which standard should be applicable. But such a jury is no more capable of choosing be-

tween conflicting standards in this highly technical area than it is in creating a standard for itself. For this very reason it has always been the rule that:

The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant, or a disagreement of doctors of equal skill and learning as to what the treatment should have been, does not establish negligence. In such cases, the court must hold that there is nothing upon which the jury may pass, the reason being that the jury may not be allowed to accept one theory to the exclusion of the other. *Richison v. Nunn*, 57 Wn.2d 1, 16, 340 P.2d 793 (1959).

Accord: *Fritz v. Horsfall*, 24 Wn.2d 14, 163 P.2d 148 (1945).

In dismissing the case the trial court stated:

[B]efore a surgeon can be held liable for malpractice he must have been guilty of doing something or not doing something that is the recognized standard of medical care in the community in which he is practicing. So the medical standard or the minimal standard may be the same here that it is in Beverly Hills or New York or some place else, *but nobody has said so.* [Italics ours.]

[T]he plaintiff is unable to show that the standards of treatment by Dr. Pangman, Dr. Brown and Dr. Mowery, and everybody who does this kind of business, are the same standards, and that those standards require certain things.

There was no error. The judgment of dismissal is affirmed.

HILL, ROSELLINI, and HALE, JJ., concur.

---

May 28, 1968. Petition for rehearing denied.