[No. 38992. Department One. May 9, 1968.]

ADA E. HAYES, *Appellant*, v. FRANKLIN F. HULSWIT *et al.,*
*Respondents.**

*Horton & Wilkins,* for appellant.

*Robert A. Morrow* (of *Karr, Tuttle, Campbell, Koch &*
*Granberg*), for respondents.

*Reported in 440 P.2d 849.

WEAVER, J.—Plaintiff appeals from a judgment dismissing her action entered after the court had sustained a challenge to the sufficiency of the evidence.

 We are mindful of the oft-quoted rule that a challenge to the sufficiency of the evidence admits the truth of the opposing party's evidence, and all inferences that can reasonably be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and most favorably for the party against whom the motion is made. *Hellriegel v. Tholl,* 69 Wn.2d 97, 98, 417 P.2d 362 (1966), and authorities cited.

This is an action by plaintiff, a resident of Walla Walla, against Franklin F. Hulswit, a licensed dentist specializing in oral surgery in Pasco, Washington, for damages allegedly arising from defendant's malpractice.

 In actions such as this:

(1) Plaintiff must establish by competent evidence the standard and degree of care and skill expected of the average medical or dental practitioner, in the class to which defendant belongs, acting in the same or similar circumstances. As this court recently said:

> This standard of care is that established in an area coextensive with the medical and professional means available in those centers that are readily accessible for appropriate treatment of the patient. *Pederson v. Dumouchel,* 72 Wn.2d 73, 431 P.2d 973 (1967).

(2) Plaintiff's evidence must establish that defendant failed to meet this standard of care.

(3) Plaintiff's evidence must establish that defendant's alleged failure to meet the standard of care was a proximate cause of her alleged damage.

(4) Plaintiff's evidence must establish that she suffered damage by reason of defendant's failure to meet this standard of care.

In a recent action for damages for medical malpractice in which the trial court held that plaintiff had failed to establish a prima facie case, this court said:

> The prima facie case in negligence is the showing of an act or omission by the defendant which breaches a stand-

ard of care owed by him to the plaintiff, which breach is the cause, both in fact and proximately, of damage to the plaintiff. The sole question on appeal is whether plaintiff introduced proof that defendant failed to observe a standard of care owed the plaintiff. *Versteeg v. Mowery,* 72 Wn.2d 754, 435 P.2d 540 (1967).

With this foundation we turn to the facts.

Plaintiff, 63 years of age, was edentulous; she wore upper and lower dentures. She developed an impacted third molar (wisdom tooth), which infected the jawbone and surrounding tissue; this caused discomfort beneath her lower denture. Plaintiff was referred to defendant, an oral surgeon, for removal of the impacted tooth.

September 17, 1963, defendant operated upon plaintiff. The operation entailed incision into the gum and entry into the jawbone, which covered one-half of the crown of the tooth and all of its roots. During the course of removal, plaintiff's jaw broke at the site of the impacted tooth. Defendant set the fracture during the same surgical procedure by placing a wire loop through the two segments of the jaw and drawing them together. Defendant testified that alignment of the jaw was satisfactory, but not perfect. He, of course, visually observed the positioning secured when he set the fracture. Plaintiff's professional witness, Dr. Donald Smith, testified that "slightly above two millimeters of displacement would be acceptable."

Plaintiff returned to defendant five times for care and treatment between September 17, 1963, the date of the operation, and October 30, 1963. She advised defendant of continuing pain. In the meantime and prior to her last visit to defendant on October 30, plaintiff on eight different occasions, consulted two physicians in Walla Walla.

October 31, 1963, the day after plaintiff had visited defendant, she consulted Dr. Fred F. Crutcher, a licensed dentist practicing in Walla Walla and specializing in orthodontics. She told him that her lower denture would no longer fit. Dr. Crutcher told her that she would probably need a new lower denture because of the extraction. Dr. Crutcher, who testified by deposition as an expert witness for plain-

tiff, stated that had plaintiff's lower denture been corrected, the significance of the jaw displacement would have been reduced while she was wearing the denture.

Not having her previous dental history, Dr. Crutcher had plaintiff's lower jaw X-rayed. After seeing the X rays, Dr. Crutcher diagnosed plaintiff to have "an offset in the mandible at the site of the fracture of approximately five millimeters." He did not see her again until November 11, 1963, at which time he assisted Dr. Donald Smith, a licensed medical doctor and orthopedic surgeon practicing in Walla Walla, in an operation in which plaintiff's jaw was broken and reset in order to relieve a nerve impingement.

Dr. Smith first saw plaintiff on November 10 or 11 at the request of Dr. Bohlman, a general practitioner. He testified that the offset, or discrepancy at the site of the fracture in plaintiff's jaw after defendant had set it, would not be considered significant in the absence of pain; that the position of the reduced fracture evidently was the same between September 17 and November 11; that a month to 6 weeks would be a reasonable period of time to recover from a jaw fracture; and that defendant would possibly be justified in waiting that period of time to determine plaintiff's recovery. It was not until November 10 or 11, when Dr. Smith first saw plaintiff, that he reached the conclusion that an additional procedure would be necessary because of a nerve impingement.

When the trial judge dismissed the jury, he explained that a case like this "requires testimony by other physicians of a failure to live up to the standard of care of a doctor in this community, and basically my decision to dismiss the case is based on the failure of the medical testimony to come up to that requirement."

After a careful reading of the record, we agree with the trial court's conclusion.

Keeping in mind that this action is not based upon defendant's negligence causing the original fracture when the impacted wisdom tooth was extracted, but upon the claim that defendant's subsequent treatment was negligent, we

find nothing in the record to establish a medical standard of care that defendant breached during this period.

It is true that Dr. Crutcher, testifying by deposition, stated that it was standard procedure to take an X ray if a person came to the office with this type of complaint; however, there is no testimony to establish that defendant's failure to X-ray plaintiff's jaw during this period was negligence on his part. In fact, negligence is negatived; for Dr. Smith, testifying for plaintiff, observed that the oral surgeon who performed the first operation could tell by visual inspection at the time of the operation and by palpation the extent of the malalignment; the X ray would merely have confirmed what he already knew.

In the last analysis, all that plaintiff's evidence establishes is a difference of professional opinion as to diagnosis and treatment. This alone is not evidence of malpractice.

■ Our disposition of this case is governed by the rule announced in *Richison v. Nunn,* 57 Wn.2d 1, 16, 340 P.2d 793 (1959), and recently reaffirmed in *Versteeg v. Mowery,* 72 Wn.2d 754, 435 P.2d 540 (1967):

> The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant, or a disagreement of doctors of equal skill and learning as to what the treatment should have been, does not establish negligence. In such cases, the court must hold that there is nothing upon which the jury may pass, the reason being that the jury may not be allowed to accept one theory to the exclusion of the other.

The judgment is affirmed.

Rosellini and Hale, JJ., and James, J. Pro Tem., concur.

Finley, C. J. (dissenting)—The question here on appeal is whether the evidence as to defendant's negligence was sufficient to take the case to the jury. In my judgment it was, and defendant's motion challenging its sufficiency should not have been granted by the trial court.

It is an elusive juristic function or operation to determine whether the evidence was "sufficient" for a case to go to

the jury. We have stated that "sufficient" evidence means "substantial" evidence, *e.g.*, *Knight v. Trogdon Truck Co.*, 191 Wash. 646, 71 P.2d 1003 (1937), but this juxtapositioning of quantitative adjectives is more tautological than illuminating. "Substantial" evidence has been described as "more than a mere scintilla" of evidence, *e.g.*, *Schorzman v. Brown*, 64 Wn.2d 398, 391 P.2d 987 (1964). But, again, this nomenclature, although interesting and even ingenious conceptually, is hardly enlightening. Substantial evidence is perhaps best described as evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed, *Grange v. Finlay*, 58 Wn.2d 528, 364 P.2d 234 (1961), or as evidence which would be convincing to reasonable men, *Trudeau v. Haubrick*, 65 Wn.2d 286, 396 P.2d 805 (1964). *See* Trautman, *Motions Testing the Sufficiency of Evidence*, 42 Wash. L. Rev. 787 (1967). However, even this additional exploration for a more realistic technique or amenable means of measurement provides only scanty help or guidelines for determining whether evidence is sufficient to take a case to the jury. With these considerations in mind, it is with some trepidation that I assume the task of dissenting from the majority opinion. Be this as it may, I am convinced, albeit intuitively or as a matter of personal judgment, that plaintiff's evidence was substantial enough to withstand defendant's attack. Consequently, I cannot agree with the conclusion of the majority sustaining the trial court's dismissal of this lawsuit.

Testimony of two doctors was introduced in the instant case in plaintiff's behalf. Dr. Fred R. Crutcher, an orthodontist, was deposed by plaintiff prior to trial. He was one of two doctors who performed the operation in which plaintiff's jaw was refractured and reset. While being deposed, Dr. Crutcher testified that he examined X rays of plaintiff's jaw taken subsequent to the time defendant set the fracture and that these X rays indicated that plaintiff's mandible was five millimeters out of alignment—an amount he considered excessive. In Dr. Crutcher's opinion, it was this

malalignment which caused plaintiff's pain. According to Dr. Crutcher, it is standard post-operative procedure to X-ray a fracture when a patient, such as plaintiff, complains of discomfort and pain. Furthermore, he stated that the excessive malalignment was visible to anyone who understood how to interpret X rays. In short, it would seem that defendant's course of action deviated substantially from the standard of care described by Dr. Crutcher.

Dr. Donald A. Smith, an orthopedic surgeon, also testified for plaintiff. He, along with Dr. Crutcher, performed the second operation on plaintiff's jaw. Dr. Smith's version of plaintiff's condition differed from that of Dr. Crutcher. Dr. Smith testified that in his opinion the mandible's malalignment amounted to approximately two, rather than five, millimeters. It was his view that this malalignment would not have been intolerable had it not pinched a nerve and thereby caused plaintiff excessive pain. Dr. Smith stated that, while 4 to 6 weeks would be a proper time for a doctor to wait for pain to subside from an operation such as that undergone by plaintiff under *most* circumstances, in the instant case he felt plaintiff's pain was probably sufficiently more severe to require earlier action. According to Dr. Smith, earlier action might well have avoided the necessity of rebreaking plaintiff's jawbone. It thus would seem that defendant's course of action also deviated substantially from the standard of care described by Dr. Smith.

The majority observe that any inference of negligence which arises from Dr. Crutcher's statement concerning the standard practice of X-raying a treated fracture which is causing the patient difficulty is negatived by Dr. Smith's statement that an X ray would merely confirm what the treating physician already knew from visual observation. This pronouncement by the majority seems to me quite dubious. Dr. Smith's statement concerned the need for an X ray *prior* to performing an operation while Dr. Crutcher's statement concerned *post*-operative care. One of these statements can hardly be said to negative the other.

The majority also state that the testimony of the two doctors merely establishes a difference of medical opinion

as to the proper treatment, rather than establishing standards of care from which defendant deviated to plaintiff's detriment. Therefore, says the majority, the rule announced in *Richison v. Nunn*, 57 Wn.2d 1, 340 P.2d 793 (1959)—that differences of opinion will not establish negligence—is controlling. I disagree, however, with this interpretation of the instant case. The testimony of each doctor described a standard of care from which defendant deviated, and thus constitutes far more than a difference of opinion with defendant. Regardless of which version is believed, there is at least some evidence of defendant's negligence. The rule cited by the majority may be correct but it is not relevant and controlling in the instant case.

In an *impressive opinion* written for the court by Weaver, J. in *Pederson v. Dumouchel*, 72 Wn.2d 73, 431 P.2d 973 (1967), this court forthrightly and courageously effected some needed and constructive changes in the law concerning medical malpractice cases. The changes were, in my best judgment, needed and overdue to adjust and put the "scales of justice" in better balance and working condition in such cases. Having done this, I see no reason to start backing up in the instant case by attempting to distinguish *Pederson v. Dumouchel, supra*, and whittle down its effect.

It may be conceded that plaintiff's case is not a strong one. Nevertheless, and despite the inherent difficulties in making such a determination, her case appears to be supported by evidence of a reasonably and rationally convincing quality. Consequently, it should not have been taken from the jury.

Having challenged an elusive windmill to mortal combat, the dissent rests.

---

July 22, 1968. Petition for rehearing denied.